## COMMONWEALTH *vs.* JOHN QUINLAN.

Plymouth.    February 27, 1891. — April 3, 1891.

Present: FIELD, C. J., HOLMES, KNOWLTON, MORTON, & LATHROP, JJ.

*Intoxicating Liquors — Common Nuisance — Complaint — Videlicet —*
*" Tenement."*

A complaint for keeping and maintaining between certain dates "a certain nuisance, to wit, a tenement" in a certain town, used for the illegal sale and keeping for sale of intoxicating liquors, sufficiently sets forth an offence under the Pub. Sts. c. 101, §§ 6, 7, and need not more particularly describe the place so used.

COMPLAINT alleging that John Quinlan, of Rockland, on September 15, 1889, and on divers days and times between that day and January 20, 1890, unlawfully "did keep and maintain a certain nuisance, to wit, a tenement at said Rockland then and on said other days and times there. used for the illegal sale and illegal keeping for sale of intoxicating liquors."

In the Superior Court, on appeal, before the jury were impanelled, the defendant moved to quash the complaint because : " 1st. The same is insufficient, uncertain, and does not with accuracy set out any offence known to the law.  2d. Because it does not allege that the tenement mentioned in said complaint was kept by the defendant."  *Bishop,* J. overruled the motion.

The defendant was then tried, and found guilty, and alleged exceptions.

*H. H. Pratt,* for the defendant.

*A. J. Waterman,* Attorney General, *& H. A. Wyman,* Second Assistant Attorney General, for the Commonwealth.

LATHROP, J.   The complaint in question, though not in a form to be commended, sufficiently sets forth an offence under the Pub. Sts. c. 101, §§ 6, 7.

In *Commonwealth* v. *Hart,* 10 Gray, 465, the indictment charged that the defendants " did keep and maintain a certain common nuisance, to wit, a certain building, to wit, a house of ill fame," and contained other allegations applicable to the building.   It was contended by the defendants, that the

words " did keep and maintain a certain common nuisance "
were clearly insufficient, and that these words were not aided
by the words under the videlicet. But the court held that the
general expression first used, though susceptible of a different
meaning in itself, was, by the videlicet, restricted and confined
to a definite fact.

" The precise and legal use of a videlicet in every species of
pleading " was defined to be, " to enable the pleader to isolate,
to distinguish, and to fix with certainty, that which was before
general, and which, without such explanation, might with equal
propriety have been applied to different objects." 10 Gray, 468.

The same principles apply to the complaint now under con-
sideration. The videlicet particularizes what was left too gen-
eral. The descriptions are not repugnant to each other, and the
accused is not exposed to the danger of misapprehending the
exact offence he is called on to answer.

The defendant further contends that, although the word " ten-
ement " in the videlicet is used in the statute, this is not enough,
because the word has several meanings. As used in the Pub.
Sts. c. 101, §§ 6, 7, it means either a building, or a part of a
building. See *Commonwealth* v. *Hersey*, 144 Mass. 297 ; *Com-
monwealth* v. *Lee*, 148 Mass. 8, and cases cited. It is unneces-
sary, however, to consider this question further, for in *Common-
wealth* v. *Skelley*, 10 Gray, 464, it was held that an indictment
under the St. of 1855, c. 405, § 1, (which is similar to the Pub.
Sts. c. 101, § 6,) for keeping and maintaining a certain common
nuisance, to wit, " a tenement " in a certain street and city, used
in a manner prohibited by that statute, need not more particu-
larly describe the place so used.

*Exceptions overruled.*