STATE OF NEBRASKA, APPELLEE, V.
JOHN L. CURLILE, APPELLANT.
642 N.W.2d 517

Filed April 9, 2002.   No. A-01-616.

Gerard A. Piccolo, Hall County Public Defender, for appellant.

Don Stenberg, Attorney General, and Marilyn B. Hutchinson for appellee.

IRWIN, Chief Judge, and SIEVERS and MOORE, Judges.

IRWIN, Chief Judge.

## I. INTRODUCTION

John L. Curlile appeals from his convictions and sentences on charges of making a terroristic threat and using a weapon in the commission of a felony. The charges arose out of a situation wherein Curlile, while parked in a vehicle outside a convenience store, waved a firearm up and down and shouted in the direction of an employee inside the convenience store. On appeal, Curlile alleges there was insufficient evidence to convict him of the charged crimes. We cannot find that the trial court was clearly wrong in finding the evidence sufficient, and we affirm.

## II. BACKGROUND

The record in this case indicates the following undisputed facts:

Karen Ann Fanda was working as a cashier at a Gas 'N Shop in Grand Island, Nebraska, at approximately 7:30 p.m., on August 11, 2000, when she looked up and observed Curlile outside the store window. Curlile was seated in his car and was yelling in Fanda's direction while waving a gun up and down. After testifying that it "looked like" Curlile was looking at her, Fanda described that she felt "very scared," "ducked down behind the counter," pulled the store alarm, and yelled to another female coworker who was in the store to "get down."

Sgt. Dale Hildebrand, of the Grand Island Police Department, was dispatched to respond to the incident. Hildebrand was informed by dispatch that a man, later identified as Curlile, had waved or pointed a gun toward the business and then drove off. Hildebrand was informed that Curlile was traveling eastward on U.S. Highway 30 in an older model Chevelle- or Malibu-type vehicle, black in color, with "red flames" on the side. Hildebrand was traveling westward on Highway 30 when he observed the described car pass him, heading in the opposite direction. Hildebrand "jumped the island and got in behind [Curlile]." Curlile did not stop his vehicle immediately, but drove "half a mile to the next turn-off [and] continued on over the Second Street overpass" before turning onto Grant Street and finally bringing his vehicle to a stop.

A "felony traffic stop" was then conducted of Curlile, with a second police officer providing backup. Curlile was the sole occupant of the stopped car. A .38-caliber revolver and six rounds of ammunition were recovered in a search of the car. Two of the rounds were located lying beside the gun.

On October 31, 2000, the State filed an information in the district court for Hall County charging Curlile with one count of making a terroristic threat, under Neb. Rev. Stat. § 28-311.01 (Reissue 1995), and one count of using a deadly weapon in the commission of a felony, under Neb. Rev. Stat. § 28-1205(1) (Reissue 1995). After a bench trial, the court found the evidence sufficient to support verdicts of guilty on both counts and imposed consecutive sentences of 1 to 2 years' imprisonment for terroristic threats and 2 to 3 years' imprisonment for use of a deadly weapon. Curlile appeals.

## III. ASSIGNMENT OF ERROR

On appeal, Curlile claims that there is insufficient evidence to support his convictions.

## IV. ANALYSIS

### 1. STANDARD OF REVIEW

When reviewing a criminal conviction on appeal, it is not the duty of the appellate court reviewing the defendant's conviction to resolve conflicts in the evidence, pass on the credibility of the witnesses, or reweigh the evidence; such matters are for the finder of fact, and the defendant's conviction must be affirmed if the properly admitted evidence, viewed and construed most favorably to the State, is sufficient to support the conviction. See *State v. Long*, 8 Neb. App. 353, 594 N.W.2d 310 (1999). The relevant question for the appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Redmond*, 262 Neb. 411, 631 N.W.2d 501 (2001); *State v. Powers*, 10 Neb. App. 256, 634 N.W.2d 1 (2001). The findings of the court have the effect of a jury verdict and cannot be disturbed by an appellate court unless they are clearly wrong. *State v. Wood*, 220 Neb. 388, 370 N.W.2d 133 (1985). See, also, Black's Law Dictionary 563 (7th ed. 1999) (defining "clear error" as decision or action that is unquestionably erroneous). Further, it has been frequently said that only where evidence lacks sufficient probative value as a matter of law can an appellate court set aside a guilty verdict as being unsupported by evidence beyond a reasonable doubt. *State v. Ramsay*, 257 Neb. 430, 598 N.W.2d 51 (1999).

### 2. TERRORISTIC THREAT

Given the above standard of review, the issue presented for us is whether, viewing the evidence and the undisputed facts as set forth above, any rational trier of fact could conclude that the State had proven the elements of terroristic threats beyond a reasonable doubt. Curlile specifically argues that the State failed to prove two elements of the crime: (1) a threat to commit a crime of violence

and (2) an intent to terrorize. We find that a rational trier of fact could conclude that the State did prove both of these elements.

### (a) Threat to Commit Crime of Violence

The initial issue presented on appeal is whether the defendant's actions constituted a threat to commit a crime of violence. According to Curlile, under current case law, the State must show that he "pointed" the gun directly "at" someone to establish a "threat," and Curlile argues that the evidence shows that he never actually "pointed" the gun "at" anyone. We disagree with Curlile, however, and conclude that a rational trier of fact could conclude that his actions constituted a threat to commit a crime of violence.

For purposes of § 28-311.01, a threat may be written, oral, physical, or any combination thereof. *State v. Tillman,* 1 Neb. App. 585, 511 N.W.2d 128 (1993). In *State v. Tillman,* the officer's duty weapon was taken from him, and the defendant pointed it at the officer and said to the officer, " ' "Now you are going to get yours." ' " 1 Neb. App. at 587, 511 N.W.2d at 130. This court described the situation as a face-to-face confrontation and as a situation in which a threat can be conveyed in many ways. In *State v. Bottolfson,* 259 Neb. 470, 610 N.W.2d 378 (2000), the defendant was charged with terroristic threats and use of a weapon to commit a felony. The trial judge sustained a plea in abatement, and the State appealed. The Supreme Court reversed, indicating that the preliminary hearing evidence supported a finding of probable cause and reciting evidence that the defendant approached the victim after fighting with the victim's companion, pulled out a knife, and pointed the knife at the victim while threatening her. The Supreme Court held that the evidence was sufficient to conclude that the defendant threatened to commit a crime of violence against the victim. Nowhere in either *State v. Tillman* or *State v. Bottolfson* was it held that pointing the weapon directly at the victim is a necessary prerequisite.

In *State v. Methe,* 228 Neb. 468, 470, 422 N.W.2d 803, 806 (1988), quoting *In re Interest of Siebert,* 223 Neb. 454, 390 N.W.2d 522 (1986), the Supreme Court stated, " '[t]o "threaten" is commonly understood to mean promising punishment, reprisal, or distress. Webster's Third New International Dictionary,

Unabridged 2382 (1981).' " The undisputed evidence in the present case that the "victim," Fanda, was frightened enough for her safety to seek cover behind a counter and yell for others in the area to seek immediate cover, although not determinative on the question of whether the actions of waving a gun up and down while not pointing it directly at Fanda was a threat, is probative on the issue of whether Curlile's actions constituted a threat. See *State v. Powers*, 10 Neb. App. 256, 634 N.W.2d 1 (2001) (crime of terroristic threats does not require evidence that victim actually feel threatened).

■ Curlile urges us to hold that he could not have committed the crime of terroristic threats without pointing the gun directly at Fanda. We reject that position. Except in extreme circumstances, terroristic threats cases will largely be determined by the context of the interaction between the involved people. Thus, the angle at which a gun is pointed directly at someone is not the determinative factor, although it is clearly an important factor. Certainly, the determination of whether Curlile's actions constituted a threat must be made in context, considering the facts of this case.

The evidence is undisputed that Curlile was parked immediately in front of the store where Fanda worked. The evidence is undisputed that Curlile was visible from inside the store. The evidence is undisputed that Curlile was yelling in Fanda's direction while waving a .38-caliber revolver up and down, albeit not with the barrel pointed immediately in Fanda's direction. The evidence is undisputed that Fanda experienced a visceral feeling of fright severe enough to prompt her to seek cover behind a store counter, pull the alarm, and yell to another employee to "get down." Although Fanda candidly conceded that she could not hear the specific words being yelled by Curlile, she was able to see his face and identify his demeanor as he yelled and waved the gun up and down. In light of our high standard of review concerning the trier of fact's factual conclusion, the question becomes whether any rational trier of fact could find this to be a threat. We cannot conclude that no reasonable person could conclude that the actions committed by Curlile in Fanda's presence constitute a threat as defined by Nebraska law, a conclusion that would be necessary to reverse Curlile's conviction on this basis.

### (b) Intent to Terrorize

The second step in the analysis of whether Curlile's actions constituted a terroristic threat is to determine whether Curlile intended to terrorize the victim. Curlile argues that because the State alleged only "intent" in the information, the State is precluded from relying on the "reckless disregard" portion of the statute. Brief for appellant at 9. We agree with this assertion by Curlile. An information must inform the accused with reasonable certainty of the charge against him so that he may prepare his defense and be enabled to plead the judgment as a bar to a later prosecution for the same offense. *State v. Scott*, 206 Neb. 451, 293 N.W.2d 114 (1980). Having charged Curlile only with intent to terrorize, and not reckless disregard of causing terror, the State was required to prove that specific intent beyond a reasonable doubt.

A direct expression of intention by the actor is not required because the intent with which an act is committed involves a mental process and intent may be inferred from the words and acts of the defendant and from the circumstances surrounding the incident. See, *State v. Broussard*, 235 Neb. 809, 457 N.W.2d 457 (1990); *State v. Swigart*, 233 Neb. 517, 446 N.W.2d 216 (1989); *State v. Rodriguez*, 6 Neb. App. 67, 569 N.W.2d 686 (1997). Whether a defendant possesses the requisite state of mind is a question of fact and may be proven by circumstantial evidence. *State v. Willett*, 233 Neb. 243, 444 N.W.2d 672 (1989). As such, given our standard of review set forth above, the issue here again becomes whether any rational trier of fact could conclude, when viewing the evidence in the light most favorable to the State, that the State has proven Curlile had the intent to terrorize Fanda.

The State argues that Curlile's "intent to threaten [Fanda] may be inferred from the fact he was looking directly at her, yelling, and waving a handgun up and down just outside the window where she was working in a very exposed public place." Brief for appellee at 7. We agree. The evidence set forth above which supported the finding that Curlile made a threat also provides inferential support for the finder of fact's conclusion that Curlile intended to terrorize Fanda. In short, we cannot conclude

that the trial court's factual conclusion that Curlile, in parking his car in front of Fanda's place of employment, looking in her direction, yelling in her direction, and waving a .38-caliber revolver up and down simultaneously, had the requisite intent to terrorize is clearly wrong. We cannot conclude that no rational trier of fact could reach this conclusion, as we would be required to do to reverse Curlile's conviction on this basis.

### (c) Additional Evidence

█ Finally, the record in the present case provides additional evidence to support Curlile's conviction. To aid in determining the innocence or guilt of a defendant, a fact finder is allowed to consider the defendant's voluntary flight immediately or soon after the occurrence of a crime. *State v. Jacob*, 253 Neb. 950, 574 N.W.2d 117 (1998); *State v. Tucker*, 242 Neb. 336, 494 N.W.2d 572 (1993). The circumstances surrounding Curlile's flight reasonably justify an inference that it was done with a consciousness of guilt and pursuant to an effort to avoid apprehension or prosecution based on that guilt. See *State v. Jacob, supra.* Even if Curlile's flight could be explained otherwise, the circumstances are such that the trier of fact was entitled to consider whether Curlile's actions constituted flight. See *id.* However, even without considering Curlile's flight, the evidence was more than sufficient to support the trial court's finding of guilty beyond a reasonable doubt.

### 3. Use of Weapon

Curlile also challenges the sufficiency of the evidence to support his conviction for using a weapon in the commission of a felony. Curlile's only assertion in this regard is that the evidence was insufficient to support his conviction for the underlying felony, terroristic threats. In light of our discussion of that issue above, we need not further discuss this assertion of error.

### V. CONCLUSION

The judgment of the trial court was not clearly or unquestionably erroneous and was based on a myriad of factual determinations. The evidence was such that it cannot be said that no rational person could conclude as the trial court did, and the trial

60

court's factual determinations cannot be reversed. The judgment of the trial court is affirmed.

AFFIRMED.

SIEVERS, Judge, dissenting.

I find that with all due respect to my colleagues, I cannot join in the majority opinion. While the majority says that the determination of whether Curlile's actions constitute a threat to Fanda "must be made in context," the majority then fails to recount the most important contextual facts of the case. These omitted facts are that Curlile was a regular customer of a Gas 'N Shop convenience store located on U.S. Highway 30 in Hall County. He went to the store once or twice a day to purchase telephone cards and other items. The store clerk involved in this incident, Fanda, often saw Curlile in the store, but never had any difficulties with him. On August 11, 2000, Curlile purchased a telephone card at the store and then left. Fanda rang up the purchase, but had no conversation with Curlile, and certainly no problem. This leads me to the question: If Curlile was really threatening Fanda with a crime of violence, why?

I know that the State does not have to prove motive, but the evidence reveals behavior which is clearly equivocal: Is it criminal behavior constituting a threat to commit a crime of violence, or is it odd behavior having some other genesis? Thus, it is all the more crucial that we look hard at context for some explanation and understanding of what Curlile was doing. The lack of any reason, past or present, for threatening Fanda means that the inferences which the majority is willing to allow the trial judge to draw do not come so easily to me. And, if the State's burden of proving beyond a reasonable doubt that Curlile committed this crime is to have any real meaning—as opposed to just words that we recite by rote and habit—then I find I cannot agree that the State adduced sufficient evidence to prove the crime.

The standard for the appellate review of criminal convictions is fully articulated in the majority's opinion, and I will not repeat it. Needless to say, the standard of review is difficult because it is phrased so that in order to reverse this conviction, we would have to find that the trial judge's decision was "irrational," a difficult characterization to reach. Nonetheless, this is not a case of a trial judge choosing one version of the facts over

another. Here, the facts are wholly undisputed. Those facts do not prove Curlile guilty beyond a reasonable doubt.