SHEPHERD, Circuit Judge,
dissenting.
I respectfully dissent from the majority’s reversal of the district court. The information reported to the Lincoln Police Department, combined with the instructions Officer Kaiser received at the outset of his'shift and his own observations, constituted “a particularized and objective basis for suspecting the particular person stopped of criminal activity.” United States v. Cortez, 449 U.S. 411, 417-18, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981). Accordingly, in my opinion, the stop of Duffie’s vehicle was constitutional.
At 9:22 p.m. on November 2, 2011, Nicholas Miller, a clerk at a Lincoln, Nebraska convenience store telephoned the Lincoln Police Department and made the following report:
Miller, clerk at Kwik Shop, stated a B/M came into the store and purchased an item. Miller stated he and Nomenyo, another clerk, asked the B/M general questions, and he wouldn’t respond. Miller stated the B/M kept starring [sic] at the cash register. Nomenyo stated when he took out the garbage, he noticed the same B/M sitting in the passenger seat of a early 90s Astro style van in front of the store. Nomenyo stated the van was maroon with white stripes down the side. Nomenyo stated as he walked back into the store, the passenger held up a hand gun and acted like he was blowing smoke from the barrel. Nomenyo stated the gun looked like a silver Baretta. Miller and Nomenyo stated they did not get a license plate or see a direction of travel. The passenger was described as a B/M, late teen to early 20s, 6’0, 150 to 160 lbs., with short black hair, and brown eyes, wearing a black shirt and blue jeans. The driver was described as a B/M, late teens to early 20s, with braids or short hair, wearing a white tank top. Miller will contact officer if they have surveillance video from inside the store.
(J.A. at 134.) Later that night, at the beginning of the Lincoln Police Department’s 11:00 p.m. shift, Officer Kaiser and other officers were “informed of a suspicious person call occurring at the Kwik Shop (2811 N 48th St.) just a few hours prior to lineup, where the passenger of a maroon early 90s Astro van with white stripes held up a hand gun and acted like he was blowing smoke from the barrel.” (J.A. at 135.) Officers were instructed to be on the look out for this vehicle. “The collective knowledge of law enforcement officers conducting an investigation is sufficient to provide reasonable suspicion,” and that collective knowledge may “be imputed to the individual officer who initiated the traffic stop when there is some communication between the officers.” United States v. Thompson, 533 F.3d 964, 969 (8th Cir. 2008). Accordingly, the information reported by the convenience store clerks to the Lincoln Police Department is imputed to Officer Kaiser. This information and the instruction to be on the look out for the described vehicle was sufficient to support Officer Kaiser’s reasonable suspicion that criminal activity was afoot and justified the stop of Duffie’s van.
Although law enforcement officers may not lawfully conduct a Terry stop based on a mere hunch, “the likelihood of criminal activity need not rise to the level required for probable cause.” United States v. Jones, 606 F.3d 964, 966 (8th Cir. 2010) (citing United States v. Arvizu, 534 U.S. 266, 274, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002)). The majority states, “An objectively reasonable officer could not reliably conclude that the young man described in the report could not legally possess a firearm.” However, the Supreme Court has “consistently recognized that reasonable suspicion *886 ‘need not rule out the possibility of innocent conduct.’ ” Navarette v. California, — U.S. -, 134 S.Ct. 1683, 1691, 188 L.Ed.2d 680 (2014) (quoting Arvizu, 534 U.S. at 277, 122 S.Ct. 744). In other words, the officers did not have to exclude the possibility that the suspect at the convenience store lawfully possessed a handgun and was acting within Nebraska’s open-carry law to justify the stop.
The majority further asserts, “The incident report did not contain information sufficient to create a reasonable suspicion of criminal activity.” Citing the Nebraska third-degree assault statute and Nebraska’s open-carry law, the majority reasons that the young man acted within the law because the clerk who saw the young man did not claim that the young man looked at him, pointed the gun at him, or in any other way threatened him. Nevertheless, Nebraska courts have not interpreted Nebraska’s terroristic threats statute so narrowly as to require that a person point a gun directly at another person to constitute a threat. See State v. Curlile, 11 Neb. App. 52, 642 N.W.2d 517, 522 (2002) (concluding that the angle at which a gun is pointed is not the determinative factor, and “the determination of whether [a gun-holder’s] actions constituted a threat must be made in context, considering the facts of [the] case”). Furthermore, the Nebraska Supreme Court has held that the terroristic threats statute “need not produce a result in the victim,” unlike third-degree assault which “must cause a reasonable person to suffer apprehension of being bodily harmed.” See State v. Smith, 267 Neb. 917, 678 N.W.2d 733, 737 (2004) (comparing Neb. Rev. Stat. § 28-311.01(a) and Neb. Rev. Stat. § 28-310(l)(b)). Regardless, the possible terroristic threat did produce some result in the clerk because the clerk called the Lincoln Police Department to report the incident. Although the young man did not point the gun at the clerk, law enforcement could interpret the young man’s intimidating actions as a ter-roristic threat. The context in which this action occurred — at night and just after the young man had exited the convenience store after staring at the cash register and refusing to answer the clerk’s general questions — combined with the instructions from his superiors to be on the look out for the described vehicle provide a sufficient basis for Officer Kaiser to form a reasonable, articulable suspicion that criminal activity may be afoot.
The majority’s reliance on Florida v. JL, 529 U.S. 266, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000), is misplaced. The thrust of Florida v. JL is that an anonymous tip that an individual has a gun must bear sufficient indicia of reliability. See id. at 273-74, 120 S.Ct. 1375. But here, the clerks who reported the incident were not anonymous tipsters. The clerks provided their names when they gave a description of the van and the persons inside the van. Additionally, as eye witnesses to the possible unlawful activity, both clerks’ “explicit and detailed description of alleged wrongdoing, along with [their] statements] that the event was observed first hand, entitles [their report to] greater weight than might otherwise be the case.” Illinois v. Gates, 462 U.S. 213, 234, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). “In evidence law, we generally credit the proposition that statements about an event and made soon after perceiving that event are especially trustworthy because ‘substantial contemporaneity of event and statement negate the likelihood of deliberate or conscious misrepresentation.’ ” Navarette v. California, — U.S. -, 134 S.Ct. 1683, 1689, 188 L.Ed.2d 680 (2014) (quoting Fed. R. Evid. 803(1) advisory committee’s note). We also afford greater weight to calls placed to police departments as they have “some features that allow for identifying and tracing callers, and thus provide some safeguards against *887 making false reports with immunity.” Id. The clerks’ incident report has more than sufficient indicia of reliability to justify the officers’ stop. It is not a mere anonymous report of a person with a handgun, as was the case in Florida v. JL, but a detailed report by identified convenient' store clerks who called the Lincoln Police Department and described the van, its occupants, and the passenger’s suspicious and disturbing conduct with a gun.
“Reasonable suspicion depends on ‘the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.’ ” Id. at 1690 (quoting Ornelas v. United States, 517 U.S. 690, 696, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996)). The majority concludes that “the young man did not display hostile or menacing conduct toward the clerks in the store.” I disagree. The convenience store clerk’s report that a young man entered the convenience store at night, stared at the cash register while ignoring the clerk’s questions, and subsequently sat in a van pretending to blow smoke off the barrel of a hand gun in clear view as a clerk removed garbage from the store described disturbing and threatening events sufficient to support an officer’s reasonable suspicion that criminal activity was afoot under the totality of the circumstances.
Accordingly, I would hold that the officers are entitled to qualified immunity with respect to Duffle’s claim arising from the stop of his vehicle, and I would affirm the district court with respect to Duffle’s remaining claims for the reasons set forth in the District Court’s opinion.