Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
11/05/2019 09:06 AM CST

State of Nebraska, appellee,
v. William J. Nelson,
appellant.
___ N.W.2d ___

Filed October 29, 2019.    No. A-18-998.

1. **Sentences: Appeal and Error.** Appellate courts do not disturb sentences imposed within the statutory limits absent an abuse of discretion by the trial court.

2. **Statutes: Judgments: Appeal and Error.** Statutory interpretation presents a question of law. When reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusion reached by the trial court.

3. **Sentences: Appeal and Error.** Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether the sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed.

4. **Sentences.** When imposing a sentence, the sentencing court is to consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime.

5. **Sentences: Judgments.** The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observations of the defendant's demeanor and attitude and all of the facts and circumstances surrounding the defendant's life.

6. **Sentences.** It is the minimum portion of an indeterminate sentence which measures its severity.

7. ____. In the event of a discrepancy between an oral pronouncement of sentence and the written order of the sentence, the oral pronouncement controls.

8. **Courts: Sentences: Appeal and Error.** Where a portion of the court's
oral pronouncement is invalid and another portion is valid, an appellate
court has the authority to modify or revise the sentence by removing the
invalid or erroneous portion.

Appeal from the District Court for Madison County: James
G. Kube, Judge. Affirmed.

Chelsey R. Hartner, Chief Deputy Madison County Public
Defender, and Barbara J. Masilko for appellant.

Douglas J. Peterson, Attorney General, and Melissa R.
Vincent for appellee.

Riedmann, Arterburn, and Welch, Judges.

Welch, Judge.

## I. INTRODUCTION

William J. Nelson appeals his plea-based conviction for
first degree sexual assault and the sentence imposed thereon.
He contends that the sentence imposed was excessive and that
the district court erred regarding the determination that his
offense was an "aggravated offense" pursuant to Nebraska's
Sex Offender Registration Act (SORA). Specifically, he claims
that the aggravated offense determination must be made by a
jury regarding community supervision and that the evidence
did not support the district court's determination the offense
constituted an aggravated offense relating to lifetime registra-
tion. We find that the sentence imposed was not excessive,
and we affirm the court's written sentencing order which was
different than the court's oral pronouncement of Nelson's sen-
tence. Accordingly, we affirm.

## II. STATEMENT OF FACTS

In June 2018, the victim told a law enforcement officer that
in March 2016, several months before she turned 16 years
of age, she had started an ongoing sexual relationship with
Nelson, who was her half-sister's then-husband. The victim
stated that she tried to end the relationship many times but

that when she did so, Nelson always threatened to kill himself. Nelson admitted to law enforcement that he had a sexual relationship with the victim from the time she was 15 years of age until as recently as 2 months prior to the law enforcement interview.

Pursuant to a plea agreement, Nelson pled guilty to first degree sexual assault. See Neb. Rev. Stat. § 28-319 (Reissue 2016). As part of the plea agreement, the State agreed not to bring further charges. The State provided a factual basis setting forth that between the dates of July 17, 2015, and July 16, 2016, Nelson engaged in sexual intercourse with the victim starting when she was 15 years of age and he was over 19 years of age.

At the sentencing hearing, the court inquired into Nelson's life and into his relationship with the victim. Nelson told the court he was divorced and had a 6-year-old daughter who lived with her mother, he suffered from depression, and he thought about killing himself rather than living as a convicted sex offender. After repeated questioning on the subject, Nelson admitted that during the time of his sexual relationship with the victim, his suicidal ideation was largely to manipulate the victim to keep their relationship secret. At the hearing, the victim and her mother read prepared statements. The victim stated that she and Nelson confided in each other, she thought they loved each other, and they did not care about the consequences of their conduct. She stated that she soon realized she was "blinded by love and manipulation." The victim stated that Nelson cheated on her, lied to her, and secretly took pictures of her in "vulnerable situations" in order to blackmail her into not telling her family about their relationship. The county attorney later clarified that the victim was mostly nude in these pictures. The victim stated that Nelson "made [her] feel so worthless" that she considered suicide. The victim's mother said that Nelson made advances on the victim's friends and got their telephone numbers to make the victim jealous.

The court stated that Nelson's decision to take responsibility was not remarkable, because the evidence against him was so clear. The court noted the lengths that Nelson had gone to in order to keep his relationship with the victim a secret and opined that Nelson seemed to have had a total disregard for the consequences to the victim. The court sentenced Nelson to 20 to 25 years' imprisonment with credit for 98 days served. The court further found by oral pronouncements that pursuant to SORA, the offense was an aggravated offense requiring lifetime community supervision and lifetime sex offender registration; however, the court's subsequent September 21, 2018, journal entry setting forth Nelson's sentence did not make reference to either lifetime community supervision or lifetime sex offender registration. Nelson timely appeals and is represented on appeal by the same counsel as represented him in the district court.

### III. ASSIGNMENTS OF ERROR

Nelson's assignments of error, consolidated and restated, are that the district court erred (1) in imposing an excessive sentence and (2) in determining that his offense was an aggravated offense pursuant to SORA for purposes of the lifetime sex offender registration requirement and in making the aggravated offense determination for the purposes of the lifetime community supervision requirement when said determination must be made by a jury.

### IV. STANDARD OF REVIEW

[1] Appellate courts do not disturb sentences imposed within the statutory limits absent an abuse of discretion by the trial court. See *State v. Meduna*, 18 Neb. App. 818, 794 N.W.2d 160 (2011).

[2] Statutory interpretation presents a question of law. When reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusion reached by the trial court. *State v. Hamilton*, 277 Neb. 593,

763 N.W.2d 731 (2009); *State v. Kresha*, 25 Neb. App. 543, 909 N.W.2d 93 (2018).

## V. ANALYSIS

### 1. Excessive Sentence

Nelson first contends that the sentence imposed was excessive. First degree sexual assault is a Class II felony punishable by 1 to 50 years' imprisonment. See, Neb. Rev. Stat. § 28-105 (Reissue 2016); § 28-319 (first degree sexual assault). Nelson was sentenced to 20 to 25 years' imprisonment which is within the statutory sentencing range.

[3-5] Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether the sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed. *State v. Wofford*, 298 Neb. 412, 904 N.W.2d 649 (2017). When imposing a sentence, the sentencing court is to consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime. *Id*. The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observations of the defendant's demeanor and attitude and all of the facts and circumstances surrounding the defendant's life. *Id*.

At the time the presentence report was prepared, Nelson was 26 years of age. During the presentence report interview, Nelson reported that his relationship with the victim began fairly innocently, but in March 2016, he and the victim began having sexual intercourse. Nelson reported that in 2018, he threatened to commit suicide if the victim told her mother about their relationship. Nelson also expressed "intense romantic feelings" for the victim and did not recognize the

harm their relationship had caused the victim. Nelson stated that he deserved his current situation "'because I did it. There's no point in fighting something you did. It's the legal requirement they have to do for what I did. It was consensual. I understand because of [the victim's] age, it is what it is. I deserve to be in here. I know that.'" He also noted, "'Last I heard from [the victim], she loved me and I loved her. I was heartbroken when I got in here. Now I'm frustrated. All I want to know is what happened.'" The probation officer described Nelson as having a disregard for the effects of the relationship on others.

[6] Nelson has displayed an inability to comprehend the seriousness and inappropriate nature of his actions toward the victim. Although Nelson claimed to take responsibility for his actions, the judge noted that he only did so when the State had clear evidence against him. Nelson clearly attempted to maintain his inappropriate relationship with the victim through manipulation, blackmail, and threatening suicide. We further note that the minimum portion of Nelson's sentence is 20 years' imprisonment. It is the minimum portion of an indeterminate sentence which measures its severity. *State v. Haynie*, 239 Neb. 478, 476 N.W.2d 905 (1991); *State v. Tillman*, 1 Neb. App. 585, 511 N.W.2d 128 (1993). Based on the aforementioned factors, the sentence imposed was not an abuse of discretion.

## 2. Aggravated Offense

Nelson next assigns that the district court erred in finding that he was subject to the lifetime community supervision and lifetime sex offender registration requirements. The district court found by oral pronouncement that the offense was an aggravated offense requiring lifetime community supervision and lifetime registration; however, the court's subsequent September 21, 2018, journal entry setting forth Nelson's sentence did not refer to either lifetime community supervision or lifetime registration. Nelson argues that if the oral

pronouncement governs over the written journal entry, the district court's oral statement was in error. The State concedes that the oral statement was in error, but argues that the written journal entry governs over the oral pronouncement. We hold that because that portion of the district court's oral pronouncement referring to lifetime community supervision and lifetime registration was invalid, the written journal entry which corrected the error governs over the oral pronouncement, and that the written journal entry was a correct statement of the law.

The Nebraska Supreme Court generally outlined the application of SORA, prior to its amendment, in *State v. Payan*, 277 Neb. 663, 667-68, 765 N.W.2d 192, 198-99 (2009):

SORA applies to any person who pleads guilty to or is found guilty of certain listed offenses, including sexual assault as defined by § 28-319 or Neb. Rev. Stat. § 28-320 (Reissue 2008). SORA includes a general requirement that persons convicted of these listed offenses must register with the sheriff of the county in which he or she resides during any period of supervised release, probation, or parole and "for a period of ten years after the date of discharge from probation, parole, or supervised release or release from incarceration, whichever date is most recent."

Certain sex offenders, however, are subject to a lifetime registration requirement. Section 29-4005(2) provides: "A person required to register under section 29-4003 shall be required to register under [SORA] for the rest of his or her life if the offense creating the obligation to register is an aggravated offense, if the person has a prior conviction for a registrable offense, or if the person is required to register as a sex offender for the rest of his or her life under the laws of another state, territory, commonwealth, or other jurisdiction of the United States. A sentencing court shall make that fact part of the sentencing order." The lifetime community supervision provisions of

§ 83-174.03 incorporate and mirror the lifetime registration provisions of SORA. According to § 83-174.03(1), a defendant who commits an aggravated offense as defined by SORA "shall, upon completion of his or her term of incarceration or release from civil commitment, be supervised in the community by the Office of Parole Administration for the remainder of his or her life."

In determining whether an aggravated offense occurred for purposes of lifetime community supervision and lifetime registration, the Nebraska Supreme Court in *State v. Payan, supra*, described different considerations. For purposes of lifetime supervision, the Supreme Court stated:

We hold that where the facts necessary to establish an aggravated offense as defined by SORA are not specifically included in the elements of the offense of which the defendant is convicted, such facts must be specifically found by the jury in order to impose lifetime community supervision under § 83-174.03 as a term of the sentence.

*State v. Payan*, 277 Neb. at 675-76, 765 N.W.2d at 204.

Conversely, for purposes of lifetime registration, the Supreme Court stated:

We recently rejected a similar contention in *State v. Hamilton*, [277 Neb. 593, 763 N.W.2d 731 (2009),] concluding that under SORA, a sentencing judge need not consider only the elements of an offense in determining whether an aggravated offense as defined in § 29-4005(4)(a) has been committed. Instead, the court may make this determination based upon information contained in the record.

*State v. Payan*, 277 Neb. at 668-69, 765 N.W.2d at 199. The *Payan* court separately held: "We specifically note that the finding of an aggravated offense need not be made by a jury if utilized only to impose the nonpunitive lifetime registration requirements of SORA." 277 Neb. at 676, 765 N.W.2d at 204.

Because lifetime community supervision and lifetime registration involve separate considerations, and because the Legislature has amended SORA following the Supreme Court's rulings in *State v. Payan, supra*, and *State v. Hamilton*, 277 Neb. 593, 763 N.W.2d 731 (2009), we discuss those considerations separately.

(a) Lifetime Community Supervision

As we stated before, in relation to lifetime community supervision, where the facts necessary to establish an aggravated offense defined by SORA are not specifically included in the elements of the offense for which the defendant is convicted, such facts must be specifically found by a jury.

For the purposes of SORA, the term "aggravated offense" is now defined as

> any registrable offense under section 29-4003 which involves the penetration of, direct genital touching of, oral to anal contact with, or oral to genital contact with (a) a victim age thirteen years or older without the consent of the victim, (b) a victim under the age of thirteen years, or (c) a victim who the sex offender knew or should have known was mentally or physically incapable of resisting or appraising the nature of his or her conduct.

Neb. Rev. Stat. § 29-4001.01(1) (Reissue 2016).

Here, Nelson was convicted of violating § 28-319. Section 28-319(1) has as its elements the following:

> Any person who subjects another person to sexual penetration (a) without the consent of the victim, (b) who knew or should have known that the victim was mentally or physically incapable of resisting or appraising the nature of his or her conduct, or (c) when the actor is nineteen years of age or older and the victim is at least twelve but less than sixteen years of age is guilty of sexual assault in the first degree.

Nelson pled to a violation of § 28-319 because, according to the factual basis provided, Nelson subjected the victim to

sexual penetration when she was at least 12 years of age but less than 16 years of age.

Because the term "aggravated offense" as defined by § 29-4001.01(1) is not a specifically included element of § 28-319 under the circumstances pled by Nelson in this case (Nelson did not plead to lack of consent by the victim), in order for lifetime community supervision to apply, a jury would need to find facts sufficient to find that Nelson had committed an aggravated offense or Nelson would have had to separately plead to it. Here, a jury did not find that the victim, who was over 13 years of age, did not consent to the sexual act which is a definitional requirement for an aggravated offense involving a victim 13 years of age or older. Nor, under these facts, did Nelson specifically plead to an aggravated offense by pleading guilty to a violation of § 28-319. Accordingly, if the oral pronouncement of the court governs over the written journal entry, a matter we will later address, the court erred by orally pronouncing that Nelson was subject to lifetime community supervision under Neb. Rev. Stat. § 83-174.03 (Reissue 2014).

(b) Lifetime Registration

In finding that a trial court and not a jury could separately determine whether an aggravated offense occurred, the Nebraska Supreme Court relied upon the language of SORA prior to its amendment. In *State v. Payan*, 277 Neb. 663, 668, 765 N.W.2d 192, 199 (2009), the Nebraska Supreme Court quoted from the provisions of SORA set forth in Neb. Rev. Stat. § 29-4005(2) (Reissue 2008) prior to its amendment:

"A person required to register under section 29-4003 shall be required to register under [SORA] for the rest of his or her life if the offense creating the obligation to register is an aggravated offense, if the person has a prior conviction for a registrable offense, or if the person is required to register as a sex offender for the rest of his or her life under the laws of another state, territory, commonwealth, or other jurisdiction of the United

States. A sentencing court shall make that fact part of the sentencing order."

In construing that language and the language of § 29-4005(3)(a), the Nebraska Supreme Court held:

We do not find the meaning of § 29-4005(2) to be quite so clear. The second sentence of that subsection refers to the existence of an aggravated offense or other grounds for lifetime registration as a "fact" which is to be made a part of the sentencing order. This suggests that some factfinding is necessary, and we have stated that the statute "require[s] the court, as part of the sentence, to determine if the defendant committed an aggravated offense." Had the Legislature intended that the "fact" of penetration for purposes of an aggravated offense determination should be derived solely from the elements of the offense, it could have used specific language to that effect. For example, the Legislature has enacted a statute providing that an offender may be required to submit to a human immunodeficiency virus antibody or antigen test if he or she has been convicted of certain specified offenses "or any other offense under Nebraska law when sexual contact or sexual penetration is an element of the offense." We conclude that § 29-4005(2) is ambiguous as to whether the sentencing court may make a factual finding in determining that the offense committed by a particular defendant under § 29-4005(4)(a) "involves the penetration of . . . a victim under the age of twelve years" for purposes of determining the existence of an aggravated offense under SORA. Accordingly, the statute is open to construction.

*State v. Hamilton*, 277 Neb. 593, 599-600, 763 N.W.2d 731, 736 (2009). After reviewing the language of the statute, the Supreme Court ultimately held:

We therefore conclude that under SORA, a sentencing judge need not consider only the elements of an offense in determining whether an aggravated offense as defined

in § 29-4005(4)(a) has been committed. Instead, the court may make this determination based upon information contained in the record, including the factual basis for a plea-based conviction and information contained in the presentence report. To the extent that [*State v.*] *Mastne*[, 15 Neb. App. 280, 725 N.W.2d 862 (2006),] holds otherwise, it is disapproved.

*State v. Hamilton*, 277 Neb. at 602, 763 N.W.2d at 738.

Following the Nebraska Supreme Court's pronouncements in *State v. Payan, supra*, and *State v. Hamilton, supra*, the Legislature amended SORA. In addition to changing the definition of the term "aggravated offense" and moving that definition to § 29-4001.01(1), the Legislature significantly amended the language in § 29-4005(2). The Legislature moved the operative language governing the duration of registration under SORA to § 29-4005(1) and replaced the former language of § 29-4005(2) with the following language in Neb. Rev. Stat. § 29-4005 (Reissue 2016):

(1)(a) Except as provided in subsection (2) of this section, any person to whom [SORA] applies shall be required to register during any period of supervised release, probation, or parole and shall continue to comply with [SORA] for the period of time after the date of discharge from probation, parole, or supervised release or release from incarceration, whichever date is most recent, as set forth in subdivision (b) of this subsection. A sex offender shall keep the registration current for the full registration period but shall not be subject to verification procedures during any time the sex offender is in custody or under an inpatient civil commitment, unless the sex offender is allowed a reduction in his or her registration period under subsection (2) of this section.

(b) The full registration period is as follows:

(i) Fifteen years, if the sex offender was convicted of a registrable offense under section 29-4003 not punishable by imprisonment for more than one year;

(ii) Twenty-five years, if the sex offender was convicted of a registrable offense under section 29-4003 punishable by imprisonment for more than one year; or

(iii) Life, if the sex offender was convicted of a registrable offense under section 29-4003 punishable by imprisonment for more than one year and was convicted of an aggravated offense or had a prior sex offense conviction or has been determined to be a lifetime registrant in another state, territory, commonwealth, or other jurisdiction of the United States, by the United States Government, by court-martial or other military tribunal, or by a foreign jurisdiction.

Accordingly, following the Legislature's amendment of SORA, particularly in adding the phrase "and was convicted of an aggravated offense" in § 29-4005(1)(b)(iii), the Legislature clearly eliminated the court's role in separately determining the fact of whether an aggravated offense occurred by reviewing the record and limited the inquiry as to whether the defendant has been convicted of an aggravated offense (or otherwise qualified based upon conviction of a prior offense or is a lifetime registrant in another jurisdiction). Further, the Legislature repealed the last sentence in § 29-4005(2) (Reissue 2008) formerly requiring that "[a] sentencing court shall make that fact part of the sentencing order." Instead, the Legislature replaced that language with Neb. Rev. Stat. § 29-4007 (Reissue 2016), which provides in part:

(1) When sentencing a person convicted of a registrable offense under section 29-4003, the court shall:

(a) Provide written notification of the duty to register under [SORA] at the time of sentencing to any defendant who has pled guilty or has been found guilty of a registrable offense under section 29-4003. The written notification shall:

(i) Inform the defendant of whether or not he or she is subject to [SORA], the duration of time he or she will be subject to [SORA], and that he or she shall report

to a location designated by the Nebraska State Patrol
for purposes of accepting such registration within three
working days after the date of the written notification
to register.

(We note that some provisions of SORA have been amended in
2019, but those amendments do not apply to the instant case.)

As such, the court's duty to make a finding of fact in the
sentencing order has been replaced with its obligation to pro-
vide a written notification which consists of the contents set
forth in § 29-4007(1). Here, in its oral pronouncement, the
court made reference to lifetime registration as part of its sen-
tencing order. The court erred in so including this pronounce-
ment as part of the order.

### (c) Which Order Controls

[7,8] As we stated before, in its oral pronouncement of
Nelson's sentence, the court stated that Nelson was subject to
the lifetime community supervision requirement of § 83-174.03
and the lifetime registration requirement of SORA. As we
explained above, those pronouncements were invalid. However,
in its written order, the court made no reference to either life-
time community supervision or lifetime registration require-
ments and made reference only to Nelson's sentence. This was
a proper sentence. It is well-settled that in the event of a dis-
crepancy between an oral pronouncement of sentence and the
written order of the sentence, the oral pronouncement controls.
*State v. Erb*, 6 Neb. App. 672, 576 N.W.2d 839 (1998). That
said, in cases where, as here, a portion of the court's oral pro-
nouncement is invalid and another portion is valid, an appel-
late court has the authority to modify or revise the sentence by
removing the invalid or erroneous portion. See *State v. Custer*,
292 Neb. 88, 871 N.W.2d 243 (2015) (where portion of sen-
tence is valid and portion is invalid or erroneous, court has
authority to modify or revise sentence by removing invalid or
erroneous portion of sentence if remaining portion of sentence
constitutes complete valid sentence). Although those portions

of the court's oral pronouncement that Nelson was subject to lifetime community supervision and lifetime registration were invalid—because the court modified its written order to remove those provisions—the court's written order controls over the invalid oral pronouncement. The written order of the trial court is affirmed.

## VI. CONCLUSION

Having determined that the district court's written order regarding Nelson's sentence controls, we affirm Nelson's conviction and sentence.

Affirmed.