Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
11/13/2020 08:10 AM CST

State of Nebraska, appellee, v.
Brady J. Wilson, appellant.
___ N.W.2d ___

Filed August 21, 2020.    No. S-19-638.

1. **Statutes: Appeal and Error.** Statutory interpretation presents a question of law, which an appellate court reviews independently.
2. **Convicted Sex Offender: Statutes: Legislature: Intent.** Nebraska's Sex Offender Registration Act is a civil regulatory scheme intended by the Legislature to protect the public from the danger posed by sex offenders.
3. **Statutes: Appeal and Error.** Statutory language is to be given its plain and ordinary meaning, and an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous.
4. **Statutes.** A court must attempt to give effect to all parts of a statute, and if it can be avoided, no word, clause, or sentence will be rejected as superfluous or meaningless.
5. **Statutes: Legislature: Intent.** A collection of statutes pertaining to a single subject matter are in pari materia and should be conjunctively considered and construed to determine the intent of the Legislature, so that different provisions are consistent, harmonious, and sensible.
6. **Statutes: Legislature: Presumptions: Judicial Construction.** In determining the meaning of a statute, the applicable rule is that when the Legislature enacts a law affecting an area which is already the subject of other statutes, it is presumed that it did so with full knowledge of the preexisting legislation and the decisions of the Nebraska Supreme Court construing and applying that legislation.
7. **Statutes: Legislature: Intent.** The intent of the Legislature may be found through its omission of words from a statute as well as its inclusion of words in a statute.

Appeal from the District Court for Hamilton County: Rachel A. Daugherty, Judge. Affirmed.

Mark Porto, of Porto Law Office, for appellant.

Douglas J. Peterson, Attorney General, and Siobhan E. Duffy for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Papik, J.

After accepting Brady J. Wilson's no contest pleas to first degree sexual assault and another related charge, the district court sentenced him. As part of sentencing, it found that Wilson committed an aggravated offense under the Sex Offender Registration Act (SORA) and was thus subject to a lifetime registration requirement. Wilson appeals the district court's finding that he committed an aggravated offense. We find that the district court did not err and affirm.

## BACKGROUND

*Charges and Convictions.*

In December 2018, the State charged Wilson by information with three counts of first degree sexual assault and one count of visual depiction of sexually explicit conduct involving a child. Pursuant to a plea agreement, the State later filed an amended information charging Wilson with one count of first degree sexual assault and one count of attempting to possess a visual depiction of sexually explicit conduct involving a child.

Under the plea agreement, Wilson agreed to plead guilty or no contest to the charges in the amended information. The State also agreed to dismiss charges against Wilson in another case involving the same victim. At the plea hearing, Wilson stated that he wished to plead no contest to both charges in the amended information.

The State provided a factual basis for the charges at the plea hearing. With respect to the first degree sexual assault charge, the prosecutor stated that after initially communicating on a social media application, Wilson, who was then 21 years old, met the victim, a 15-year-old female, in September 2018. Wilson brought alcohol to the meeting, and both he and the victim consumed it, with the victim drinking to the point of intoxication. Wilson then drove to a rural area and attempted to have sexual intercourse with the victim. The victim said that she did not want to have sexual intercourse, but ultimately sexual intercourse occurred. Wilson later admitted to an investigator that the victim said no when he attempted to have sexual intercourse with her.

Wilson's counsel subsequently confirmed that Wilson did not dispute the factual basis. The district court also confirmed with Wilson that he still wished to plead no contest. After doing so, the district court accepted the pleas and found Wilson guilty of both counts alleged in the amended information.

*Sentencing.*

A few months later, the district court held a sentencing hearing. The district court sentenced Wilson to 6 to 10 years' incarceration for first degree sexual assault and 1 to 3 years' incarceration for attempted possession of a visual depiction of sexually explicit conduct involving a minor.

Of relevance to this appeal, the district court stated that because of the nature of his crimes, Wilson was subject to the requirements of SORA. The district court also stated that it had found that "the offense for which you have been convicted is an aggravated offense as defined by [Neb. Rev. Stat. § 29-4001.01 (Reissue 2016)], and you are therefore required to register for life."

On the same day as the sentencing hearing, the district court also entered a written judgment and sentencing order. In it, the district court again stated that it had found that Wilson had

committed an aggravated offense and was therefore required to register under SORA for life.

Wilson timely appealed.

## ASSIGNMENT OF ERROR

Wilson assigns a single error on appeal. He contends that the district court erred by determining that Wilson committed an aggravated offense and is therefore required to register under SORA for life.

## STANDARD OF REVIEW

A trial court's factual determination that a defendant's crime was an aggravated offense under SORA is reviewed as a question of the sufficiency of the evidence. See, *State v. Norman*, 285 Neb. 72, 824 N.W.2d 739 (2013); *State v. Hamilton*, 277 Neb. 593, 763 N.W.2d 731 (2009).

[1] Statutory interpretation presents a question of law, which an appellate court reviews independently. *State v. Clemens*, 300 Neb. 601, 915 N.W.2d 550 (2018).

## ANALYSIS

*Statutory Background.*

[2] There is no dispute in this case that as a result of his conviction of first degree sexual assault, Wilson is now subject to SORA. SORA is a civil regulatory scheme intended by the Legislature to protect the public from the danger posed by sex offenders. *Hamilton, supra.* Generally, SORA requires individuals that plead guilty to or are convicted of certain enumerated offenses to register with the county sheriff in the counties where they reside, work, and attend school. See *State v. Ratumaimuri*, 299 Neb. 887, 911 N.W.2d 270 (2018). SORA requirements may also apply to individuals that plead guilty to or are convicted of other offenses. *Ratumaimuri, supra.* Wilson was convicted of first degree sexual assault under Neb. Rev. Stat. § 28-319 (Reissue 2016), a conviction that makes him automatically subject to SORA's requirements. See Neb. Rev. Stat. § 29-4003(1)(a)(i)(C) (Reissue 2016).

Those persons to whom SORA requirements apply generally must register "during any period of supervised release, probation, or parole" and then must continue to comply with SORA for a registration period following "discharge from probation, parole, or supervised release or release from incarceration, whichever date is most recent." See Neb. Rev. Stat. § 29-4005(1) (Reissue 2016). Section 29-4005(1) sets forth three different registration periods. The registration period is 15 years if the offender was convicted of a registrable offense not punishable by imprisonment for more than 1 year. § 29-4005(1)(b)(i). The registration period is 25 years if the offender was convicted of a registrable offense punishable by imprisonment for more than 1 year. § 29-4005(1)(b)(ii). Relevant to this appeal, the registration period is life if the offender was convicted of a registrable offense punishable by imprisonment for more than 1 year and was convicted of an aggravated offense. § 29-4005(1)(b)(iii). SORA defines "[a]ggravated offense" as

> any registrable offense under section 29-4003 which involves the penetration of, direct genital touching of, oral to anal contact with, or oral to genital contact with (a) a victim age thirteen years or older without the consent of the victim, (b) a victim under the age of thirteen years, or (c) a victim who the sex offender knew or should have known was mentally or physically incapable of resisting or appraising the nature of his or her conduct.

Neb. Rev. Stat. § 29-4001.01 (Reissue 2016).

*Parties' Positions on Appeal.*

Both Wilson and the State contend on appeal that the district court erred by finding that Wilson committed an aggravated offense and is therefore required to register for life, but for different reasons. The State asserts that after amendments to SORA in 2009, sentencing courts have no role to play in determining whether a defendant committed an aggravated offense and is thus obligated to register for life. According

to the State, the Nebraska State Patrol is now responsible for making that determination in all cases.

Wilson, on the other hand, argues that sentencing courts must make the determination as to whether a defendant committed an aggravated offense. He contends, however, that the district court erred by finding that he committed an aggravated offense.

Ultimately, we disagree with both the State and Wilson. As we will explain, we disagree with the State that the district court committed reversible error by making a finding as to whether Wilson committed an aggravated offense and we disagree with Wilson that the district court committed reversible error by making the finding it did.

*State's Argument.*

We begin with the State's argument that we should vacate the portion of the sentence in which the district court found that Wilson committed an aggravated offense and is thus required to register for life. Prior to statutory amendments to SORA in 2009, there was no question that a sentencing court was to make a determination as to whether a registrable offense under SORA rose to the level of an aggravated offense. Our opinion in *State v. Hamilton*, 277 Neb. 593, 763 N.W.2d 731 (2009), discussed sentencing courts' authority to find that an offense was aggravated. As we discussed in *Hamilton*, that authority was made clear by a provision within a prior version of SORA that directed sentencing courts to make the finding of an aggravated offense part of the sentencing order. See Neb. Rev. Stat. § 29-4005(2) (Reissue 2008).

As alluded to above, however, the State believes that sentencing courts no longer have the authority to find that an offense is aggravated. The State believes that amendments to SORA enacted in 2009 placed the sole authority to determine whether an offense is aggravated with the State Patrol.

[3-5] The State's argument requires us to interpret the current version of SORA. In doing so, we are guided by familiar principles. Statutory language is to be given its plain and

ordinary meaning, and an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous. *State v. Dean*, 288 Neb. 530, 849 N.W.2d 138 (2014). A court must attempt to give effect to all parts of a statute, and if it can be avoided, no word, clause, or sentence will be rejected as superfluous or meaningless. *Id.* A collection of statutes pertaining to a single subject matter are in pari materia and should be conjunctively considered and construed to determine the intent of the Legislature, so that different provisions are consistent, harmonious, and sensible. *State v. Montoya*, 305 Neb. 581, 941 N.W.2d 474 (2020).

The principal statute upon which the State relies for its argument is Neb. Rev. Stat. § 29-4013(5) (Reissue 2016), which provides that certain officials within the State Patrol "shall have access to all documents that are generated by any governmental agency that may have bearing on sex offender registration and community notification." Section 29-4013(5) goes on to state that "[a]ccess to such documents will ensure that a fair determination of what is an appropriate registration period is completed using the totality of all information available." This language, the State suggests, places the sole authority to determine whether an offense was aggravated with the State Patrol.

We observe initially that it is not obvious to us that this language confers as much authority on the State Patrol as the State contends. It would seem there would be a clearer and more direct way to confer such authority on the State Patrol. Moreover, the State has a difficult task before it to reconcile its position with another provision of SORA: Neb. Rev. Stat. § 29-4007(1)(a)(i) (Cum. Supp. 2018). That statute provides that when sentencing a person for a registrable offense under SORA, the court has a duty to provide the defendant with written notification of the duty to register and that the written notification shall, among other things, inform the defendant of "the duration of time he or she will be subject to the act." § 29-4007(1)(a)(i). This language replaced the former

language requiring sentencing courts to make a finding that the defendant committed an aggravated offense part of the sentencing order.

The obvious question for the State raised by this language is: How is the court to inform the defendant of the duration of time he or she will be subject to SORA at sentencing if that determination is made later by the State Patrol? On this question, the State takes the position that the language of § 29-4007(1)(a)(i) obligates the sentencing court to provide the defendant with only a list of possible registration periods, i.e., that the registration period might be for 15 years, it might be for 25 years, and it might be for life.

We need not decide today whether the sentencing court meets its obligation under § 29-4007(1)(a)(i) by providing the defendant with only a range of possible registration periods. But given the direction to sentencing courts to notify the defendant of "*the duration* of time he or she will be subject to the act," § 29-4007(1)(a)(i) (emphasis supplied), we cannot say that sentencing courts lack authority to find that the offender committed an aggravated offense and to inform the defendant that he or she is thus required to register for life. Moreover, we see nothing in SORA that indicates that when the sentencing court concludes that the defendant committed an aggravated offense and advises the defendant of a lifetime registration obligation, the State Patrol has authority to make a contrary determination. In making this statement, we are aware of Neb. Rev. Stat. § 29-4006(7) (Reissue 2016), which obligates the State Patrol to notify a person subject to SORA of his or her registration duration. We see no indication that in carrying out this notification obligation, the State Patrol can contradict a sentencing court's finding that the defendant committed an aggravated offense.

Our conclusion that the State Patrol cannot make a different determination regarding an offender's registration duration after the sentencing court finds an aggravated offense should not be understood to foreclose the State Patrol from playing any role in determining the registration duration for offenders

subject to SORA. Section 29-4013(5) gives it authority to determine the "appropriate registration period" and, if possible, that language must be given some effect. See *State v. Dean*, 288 Neb. 530, 849 N.W.2d 138 (2014). But under § 29-4005(2) (Reissue 2016), the State Patrol is clearly given authority to reduce the registration period for some offenders from 15 years to 10 years under certain circumstances. In addition, Wilson suggests the language of § 29-4013(5) gives the State Patrol the authority to determine the registration duration for those offenders subject to SORA as a result of out-of-state convictions where the sentencing court would not make a finding that the offense was an aggravated one under SORA. But again, it is not necessary to decide the full scope of the State Patrol's authority in this case. It is sufficient today to hold that the sentencing court has the authority to find that the defendant committed an aggravated offense and that the State Patrol lacks the authority to subsequently make a different determination.

Finally, we are not persuaded by the State's suggestion that the district court committed reversible error because it included its finding that Wilson committed an aggravated offense and is thus required to register for life in both its oral pronouncement of his sentences and the written sentencing order. On this point, the State relies on *State v. Nelson*, 27 Neb. App. 748, 936 N.W.2d 32 (2019), a recent opinion of the Nebraska Court of Appeals. In *Nelson*, the Court of Appeals concluded that the district court erred by including a finding in the oral pronouncement of a sentence that the defendant committed an aggravated offense and was thus required to register for life. The court reasoned that this was error, because after the 2009 amendments to SORA, sentencing courts are to inform the defendant of his registration duration through a written notification.

The State appears to understand the 2009 amendments to SORA to require the district court to inform the defendant of the duration of his registration obligation under SORA in a written notification separate from the sentence. That may

well be the case, but we do not believe it follows that the district court commits reversible error if its sentencing order provides that it has found that the defendant committed an aggravated offense and has a resulting lifetime registration obligation. To the extent *Nelson* suggests otherwise, it is disapproved. Wilson makes no argument on appeal that the district court failed to provide notice of the duration of his registration obligation under SORA in some format other than in the sentencing order, and we thus do not consider that issue.

*Wilson's Argument.*

Having concluded that the district court had the authority to make a determination regarding whether Wilson committed an aggravated offense, we turn to Wilson's argument that it erred by concluding he did. Wilson's argument, much like the State's, relies heavily on amendments to SORA enacted in 2009. He claims that as a result of those amendments, the district court must make its determination about whether the offense was aggravated solely by considering the elements of the offense of conviction. The court cannot, Wilson asserts, consider the facts underlying the conviction.

In yet another similarity to the argument advanced by the State, Wilson's argument would clearly lack merit if made prior to the 2009 amendments to SORA. As noted above, this court addressed this very issue in *State v. Hamilton*, 277 Neb. 593, 763 N.W.2d 731 (2009). In *Hamilton*, we laid out a number of reasons why we interpreted SORA to authorize a sentencing court, in determining whether an offense was aggravated, to consider any information in the record, including the factual basis for a plea-based conviction and information contained in the presentence report. Those reasons included our assessment that if the Legislature intended to require that the presence of aggravation be derived solely from the elements of the offense, it could have used specific language to that effect as it has in other statutes. *Hamilton, supra.*

In concluding in *Hamilton* that the pre-2009 amendment version of SORA allowed sentencing courts to consider any

information in the record, we also relied on the purposes of SORA. We noted that in enacting SORA, the Legislature made findings that sex offenders present a high risk to reoffend and that efforts to protect communities from sex offenders are impaired by a lack of information about where previous offenders live, work, and attend school. We also observed that by requiring shorter registration requirements for some offenders but lifetime registration requirements for those that commit aggravated offenses, the Legislature demonstrated an intent to provide enhanced assistance to law enforcement and protection to the public regarding those that commit aggravated offenses. We concluded that this purpose would be frustrated if a person who had in fact committed an act that would meet the definition of an aggravated offense "would be exempted from the lifetime registration requirement simply by pleading to a lesser offense." *Hamilton*, 277 Neb. at 601, 763 N.W.2d at 737.

Wilson contends that the 2009 amendments to SORA changed what the district court may consider in determining whether the defendant committed an aggravated offense. In support of this argument, he relies heavily on dicta in *State v. Nelson*, 27 Neb. App. 748, 936 N.W.2d 32 (2019). In *Nelson*, prior to finding that the district court erred by including a finding of aggravation in the pronouncement of the sentence, the Court of Appeals stated that in the amendments to SORA, the Legislature "clearly eliminated the court's role in separately determining the fact of whether an aggravated offense occurred by reviewing the record." 27 Neb. App. at 760, 936 N.W.2d at 40. The Court of Appeals understood the 2009 amendments to limit the sentencing court's inquiry "to whether the defendant has been convicted of an aggravated offense." *Id.* The Court of Appeals found that the Legislature had made this change by removing the language in § 29-4005(2) (Reissue 2008) formerly requiring that, with respect to a finding of an aggravated offense, "'[a] sentencing court shall make that fact part of the sentencing order'" and replacing it with language in § 29-4005(1)(b)(iii) (Reissue

2016) stating that the defendant had a lifetime registration requirement if convicted of a registrable offense punishable by imprisonment for more than 1 year "'and was convicted of an aggravated offense.'" *Hamilton*, 277 Neb. at 760, 936 N.W.2d at 40, 41.

[6,7] We disagree with the Court of Appeals that the 2009 amendments to SORA changed what a sentencing court may consider in determining whether the defendant committed an aggravated offense. Two principles of statutory interpretation factor heavily in our reasoning. First, in determining the meaning of a statute, the applicable rule is that when the Legislature enacts a law affecting an area which is already the subject of other statutes, it is presumed that it did so with full knowledge of the preexisting legislation and the decisions of the Nebraska Supreme Court construing and applying that legislation. *McEwen v. Nebraska State College Sys.*, 303 Neb. 552, 931 N.W.2d 120 (2019). Second, the intent of the Legislature may be found through its omission of words from a statute as well as its inclusion of words in a statute. *Stewart v. Nebraska Dept. of Rev.*, 294 Neb. 1010, 885 N.W.2d 723 (2016).

Under the first principle of statutory interpretation, the Legislature is presumed to have knowledge of our decision in *Hamilton* interpreting the prior version of SORA to allow sentencing courts to consider all information in the record to determine whether an aggravated offense had been committed. Given this presumed knowledge, one would expect the Legislature to have clearly expressed any change to our interpretation of SORA in *Hamilton*. We see no such expression, and thus the canon of interpretation regarding legislative omission comes into play.

Further, the two reasons for our interpretation in *Hamilton* that we summarized above remain just as applicable after the 2009 amendments as before. There is still no language in SORA expressly providing that whether an offense is aggravated is to be determined solely with reference to the elements of the convicted offense. And we do not understand

the 2009 amendments to SORA to have fundamentally changed its general purpose or its means of achieving that purpose by requiring certain offenders to register for life. SORA's purpose would be frustrated just as much after the 2009 amendments as before if defendants who actually committed aggravated offenses could avoid lifetime registration requirements by pleading to an offense with elements that did not necessarily constitute an aggravated offense.

Neither are we persuaded by Wilson's invocation of legislative history. Wilson claims that two items within the legislative history of the 2009 SORA amendments support his interpretation. He points to language in which the introducer stated that under the bill, "[l]ength of registration is based solely on the convicted offense(s)." See Introducer's Statement of Intent, L.B. 285, Judiciary Committee, 101st Leg., 1st Sess. (Mar. 18, 2009). He also directs us to testimony of the bill's sponsor in committee in which the sponsor indicated that the bill would move the focus from subjectively determining whether an offender is likely to reoffend to whether the offender had objectively been convicted of a particular crime. This legislative history, Wilson asserts, shows the Legislature intended to have courts no longer determine whether the conduct was aggravated with reference to all available information in the record.

We do not understand the legislative history Wilson relies on to be relevant to the question of whether the sentencing court can consider all information in the record in determining whether an offense is aggravated. One of the effects of the 2009 amendments to SORA was to remove sentencing courts' authority to find that a defendant was a sexually violent predator. Under the prior version of the statute, a finding that the defendant was a sexually violent predator would subject the defendant to a lifetime registration requirement. § 29-4005(3) (Reissue 2008). A "[s]exually violent predator" was defined to be a person convicted of one or more registrable offenses and "who suffers from a mental abnormality or personality disorder that makes the person likely to engage in sexually

violent offenses." § 29-4005(4)(c) (Reissue 2008). The prior version of SORA thus made the registration period for offenders depend upon whether the sentencing court found they were likely to reoffend. We understand the legislative history Wilson relies on to refer to the elimination of that authority in the 2009 amendments.

Now that we have determined that the district court could consider any information in the record, including the factual basis for Wilson's plea and information contained in the presentence report, we turn to the question of whether the district court erred in determining that Wilson committed an aggravated offense. We have previously held that a finding necessary to make a defendant subject to SORA if convicted of a crime that is not inherently sexual in nature must be established by clear and convincing evidence. See *State v. Norman*, 282 Neb. 990, 808 N.W.2d 48 (2012). We believe the same burden of proof would apply here. We are thus required to affirm if, viewing the evidence in the light most favorable to the State, any rational trier of fact could have found with a firm conviction that Wilson committed an aggravated offense. See *State v. Norman*, 285 Neb. 72, 824 N.W.2d 739 (2013).

Wilson acknowledges that because of the victim's age in this case, she could not legally consent to sexual activity with him. He claims, however, that the aggravated offense definition in SORA is framed in terms of actual consent, rather than legal consent. And he argues that there is insufficient evidence to show that the victim did not actually consent to the sexual intercourse at issue.

We find it unnecessary to determine whether Wilson's interpretation of consent in § 29-4001.01(1) is correct. Even assuming the aggravated offense definition is framed in terms of actual consent, we find that the district court could have reasonably found with a firm conviction that the offense was aggravated.

As we described above, in the factual basis provided by the State and to which Wilson did not object, it was stated that Wilson supplied the victim with alcohol, that she drank

to the point of intoxication, and that despite her communicating that she did not want to have sexual intercourse, sexual intercourse occurred. In addition, there is information in the presentence report that the victim reported that she had no memory of the encounter with Wilson, that she did not consent, and that she did not even know what happened until Wilson contacted her the next day and said he hoped she was not angry that they had sex.

Based on this information, the district court could have reasonably found with a firm conviction that, even setting aside the victim's inability to legally consent, she did not actually consent to sexual intercourse with Wilson and thus the offense was aggravated under § 29-4001.01(1)(a). Based on this same information, the district court could also have reasonably found with a firm conviction that Wilson knew or should have known that the victim was physically incapable of resisting or appraising the nature of her conduct and thus the offense was aggravated under § 29-4001.01(1)(c). See *In re Interest of K.M.*, 299 Neb. 636, 644, 910 N.W.2d 82, 88 (2018) ("law of sexual assault has traditionally recognized certain circumstances under which an individual lacks the capacity to consent to sexual conduct and where sexual contact with that person thus constitutes sexual assault: where the victim is severely intoxicated"). We thus reject Wilson's argument that the district court erred by finding that he committed an aggravated offense under SORA.

## CONCLUSION

Because the district court did not err in determining that Wilson committed an aggravated offense and was thus subject to a lifetime registration obligation under SORA, we affirm.

Affirmed.