Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
07/15/2022 08:07 AM CDT

State of Nebraska, appellant and cross-appellee,
v. Patrick M. Pauly, appellee and
cross-appellant.

___ N.W.2d ___

Filed April 22, 2022.    Nos. S-21-401, S-21-409.

1. **Sentences: Appeal and Error.** When reviewing a sentence within the statutory limits, whether for leniency or excessiveness, an appellate court reviews for an abuse of discretion.

2. **Judges: Words and Phrases.** A judicial abuse of discretion exists only when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying a just result in matters submitted for disposition.

3. **Motions to Dismiss: Jurisdiction: Appeal and Error.** In determining whether the district court erred in denying a party's motion to dismiss for lack of subject matter jurisdiction, an appellate court employs a de novo standard of review.

4. **Jury Instructions: Judgments: Appeal and Error.** Whether jury instructions given by a trial court are correct is a question of law. On a question of law, an appellate court is obligated to reach a conclusion independent of the determination reached by the court below.

5. **Convictions: Appeal and Error.** In reviewing a criminal conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence. Such matters are for the finder of fact, and a conviction will be affirmed, in the absence of prejudicial error, if the properly admitted evidence, viewed and construed most favorably to the State, is sufficient to support the conviction.

6. **Criminal Law: Convictions: Evidence: Appeal and Error.** When reviewing a criminal conviction for sufficiency of the evidence to sustain the conviction, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the

prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

7. **Jurisdiction: Appeal and Error.** Where a lower court lacks subject matter jurisdiction to adjudicate the merits of a claim, issue, or question, an appellate court also lacks the power to determine the merits of the claim, issue, or question presented to the lower court.

8. **Statutes.** A court must attempt to give effect to all parts of a statute, and if it can be avoided, no word, clause, or sentence will be rejected as superfluous or meaningless.

9. ____. A court must place on a statute a reasonable construction which best achieves the statute's purpose, rather than a construction which would defeat that purpose.

10. **Judgments: Appeal and Error.** When the record demonstrates that the decision of the trial court is correct, although such correctness is based on different grounds from those assigned by the trial court, an appellate court will affirm.

11. **Sentences: Appeal and Error.** A sentence imposed by a district court that is within the statutorily prescribed limits will not be disturbed on appeal unless there appears to be an abuse of the trial court's discretion.

12. **Statutes: Sentences: Appeal and Error.** While certain guidelines are set forth by statute, neither the trial court's sentencing determination nor an appellate court's review of that determination for an abuse of discretion is formulaic or simply a matter of doctrine.

13. **Sentences: Appeal and Error.** It is not the function of an appellate court to conduct a de novo review of the record to determine whether a sentence is appropriate.

14. **Sentences.** Evidence regarding a defendant's life, character, and previous conduct, as well as prior convictions, is highly relevant to the determination of a proper sentence.

15. **Convicted Sex Offender: Statutes: Legislature: Intent.** The Sex Offender Registration Act is a civil regulatory scheme intended by the Legislature to protect the public from the danger posed by sex offenders.

16. **Moot Question.** Mootness refers to events occurring after the filing of a suit which eradicate the requisite personal interest in the resolution of the dispute that existed at the beginning of the litigation.

17. **Moot Question: Words and Phrases.** A moot case is one which seeks to determine a question that no longer rests upon existing facts or rights—i.e., a case in which the issues presented are no longer alive.

18. **Rules of the Supreme Court: Appeal and Error.** Generally, parties who wish to secure appellate review of their claims must abide by the rules of the Nebraska Supreme Court.

19. ____ : ____. Depending on the particulars of each case, failure to comply with the mandates of Neb. Ct. R. App. P. § 2-109(D) (rev. 2022) may result in an appellate court's waiving the error, proceeding on a plain error review only, or declining to conduct any review at all.

20. **Appeal and Error.** Plain error is error plainly evident from the record and of such a nature that to leave it uncorrected would result in damage to the integrity, reputation, or fairness of the judicial process.

Appeals from the District Court for Sarpy County: George A. Thompson, Judge. Affirmed.

R. Scott Earl, Deputy Sarpy County Attorney, for appellant.

Marcus A. Sladek, of Dornan, Troia, Howard, Breitkreutz, Conway & Dahlquist, P.C., L.L.O., for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Funke, J.

## I. INTRODUCTION

Patrick M. Pauly was convicted of four counts of first degree sexual assault and sentenced to concurrent terms of 5 years' probation for each conviction. The State appeals, arguing the district court handed down excessively lenient sentences. Pauly cross-appeals, arguing the district court erred in denying his motion for directed verdict, motion to dismiss, and proposed jury instructions. For reasons set forth herein, we affirm Pauly's convictions and sentences.

## II. BACKGROUND

In May 2019, the State filed an information charging Pauly, who was born in May 1997, with four counts of first degree sexual assault under Neb. Rev. Stat. § 28-319 (Reissue 2016). The information was filed the day before Pauly's 22nd birthday. An amended information was filed in July 2020, still alleging four counts of first degree sexual assault under § 28-319, but further alleging the incidents occurred between January 1, 2008, and January 1, 2016.

## 1. Trial

The victim, K.H., was 15 years old at the time of trial in October 2020. Pauly's mother babysat K.H. and K.H.'s brother, J.H., when they were between the ages of 4 and 12. K.H. testified that she was a repeat victim of sexual assault at the hands of Pauly. Although she could not recall the exact number of times she was assaulted, she was able to testify to four separate incidents where Pauly assaulted her.

### (a) Assault No. 1

K.H. testified that the first incident happened in Pauly's bedroom, located in the basement of the Pauly residence. At that time, K.H. and J.H. were in Pauly's bedroom when Pauly asked J.H. to get him a soda. After J.H. left the room, Pauly told K.H. to take her pants off and lie on the bed. Pauly then closed the door, removed his clothing, lay on top of her, and inserted his penis into her vagina. On cross-examination, K.H. testified that she thought she was around 7 years old at the time, but responded "[m]aybe" when defense counsel asked her if she was 5 or 6 years old.

### (b) Assault No. 2

The next incident occurred while K.H. and J.H. were watching Pauly play video games in his bedroom which was, at this point, located in the upstairs area of the home. Pauly asked J.H. to look out the window to see if anyone was there, then told K.H. to "pull [her] pants down." Pauly then pulled his own pants down, lay on top of her, and put his penis in her vagina. He began moving up and down after penetrating her. On cross-examination, K.H. testified that this incident lasted for about a minute while J.H. was a foot away. K.H. could not recall how much time had passed between the first and second incident, but thought that the second incident occurred a couple of months after the first. J.H. testified that he did not hear anything while standing at the window.

### (c) Assault No. 3

The third incident occurred when Pauly penetrated K.H. with his finger. K.H. testified that Pauly had a "Halloween finger" he placed over his own finger and told K.H. that "this is going to feel good." Pauly instructed K.H. to take off her pants and lie on the bed. He inserted the "Halloween finger" into her vagina, causing K.H. to say "ow." As she began to scream, Pauly covered her mouth. K.H. could not say when this incident happened or how old she was at the time, and she could not recall whether this incident happened before or after the second incident.

### (d) Assault No. 4

The next incident occurred when Pauly's mother and J.H. went to the airport. Pauly told K.H. to take her pants off, and then he lay on top of her and put his penis in her vagina. K.H. also testified that on another occasion, Pauly told her to perform oral sex on him. K.H. could not recall how old she was when this incident occurred.

### (e) Motion for Directed Verdict

At the close of the State's case, counsel for Pauly made an oral motion for directed verdict. Counsel also made a "motion to quash" for lack of jurisdiction. Counsel argued that pursuant to Neb. Rev. Stat. §§ 43-246.01(1)(d) and 43-247(2) (Reissue 2016), the trial court lacked subject matter jurisdiction over any allegations that occurred when Pauly was between 11 and 14 years old. The court denied the motion because "matters such as [a] motion to quash, [a] constitutional challenge to the face [of] the statute, or as it's applied . . . are . . . waived once we [start] the trial." The court acknowledged that Pauly may have a "very good argument [for appeal]" but that those matters needed to be addressed in a pretrial hearing. Pauly argued that he did not provide notice to the State because he was not aware that the victim was going to testify that she may have been 5 or 6 years old at the time of the offenses (which

would put Pauly under 14 years of age at the time). Aside from the jurisdictional issue, the court overruled the motion for directed verdict finding there was prima facie evidence of penetration without consent and prima facie evidence regarding whether Pauly knew or should have known that the victim was incapable of resisting. After the motions were denied, Pauly put on evidence by calling his mother as a witness.

### (f) Testimony of Pauly's Mother

Pauly's mother testified that when she would leave to pick up her sister from the airport, she would always take both K.H. and J.H. with her, and that she would never leave just one of them at home. Pauly's mother also testified that during the time Pauly's bedroom was located in the basement, K.H. and J.H. were not allowed to go to the basement. Pauly's mother further testified that Pauly did not play video games in his basement/bedroom because he did not have a television or video game system down there. She also claimed that there was "no way" Pauly could have closed and latched the basement door because the door was too large for the doorframe and would not shut.

### (g) Jury Instructions and Verdict

Pauly requested the inclusion of two jury instructions regarding the date when the alleged incidents occurred. The first proposed jury instruction stated: "For each count, you must determine that the act took place on or after May 30, 2011. Source: Neb. Rev. Stat. 43-261.01 [sic] and Neb. Rev. Stat. 43-247." The second proposed jury instruction stated:

The material elements of the crimes of four counts of **First degree sexual assault** are:

1. The defendant did subject K.H. to sexual penetration without consent of the victim, and/or when he knew or should have known that the victim was mentally or physically incapable of resisting or appraising the nature of his or her conduct.

2. The act took place on or after May 30, 2011 through January 1, 2016.

3. The act took place in Sarpy County, Nebraska.

If you decide that the State proved each element beyond a reasonable doubt, then you must find the defendant guilty. Otherwise, you must find the defendant not guilty.

The court denied Pauly's requested jury instructions and the case was submitted to the jury, which found Pauly guilty on all four counts of first degree sexual assault.

Pauly then made a motion for a judgment notwithstanding the verdict, reasserting his jurisdictional argument under §§ 43-246.01 and 43-247, and also arguing sufficiency of the evidence. The court overruled the motion and ordered Pauly to undergo a presentence investigation and a psychosexual evaluation.

### (h) Motion for New Trial

Pauly timely filed a motion for reconsideration and/or new trial, arguing that the denial of his motion to quash, the denial of his proposed jury instructions, and the denial of his motion for judgment notwithstanding the verdict were all errors of law that materially affected his substantial right to a fair trial. His motion was largely based on his prior jurisdictional arguments under §§ 43-246.01(1)(d) and 43-247. The court overruled the motion for new trial.

### 2. Presentence Investigation Report

The presentence investigation report showed that Pauly had no criminal record and that he had never been sentenced to a term of probation or to a period of incarceration. Pauly reported only one previous sexual encounter with his then-girlfriend when they were in high school. Pauly admitted that he has multiple social media accounts, but he denied ever having a sexual conversation on any of those platforms. Pauly was administered the "Vermont Assessment of Sex Offender Risk-2," which is used to assess recidivism risk among adult

males who have been convicted of at least one qualifying sex offense. He scored in the "Low Risk Range," which estimates a recidivism rate of 2.6 percent in a period of 5 years. Pauly was also administered the "Sex Offender Treatment Intervention and Progress Scale," which is used to assess risk, treatment, supervision needs, and progress among adult male sex offenders. Pauly was given a combined static and dynamic risk of "Low," with an estimated recidivism rate of 0.5 percent in a 1-year period and 1.4 percent in a 3-year period.

A clinical psychological evaluation concluded that Pauly could be safely managed in the community with appropriate safeguards. The evaluation recognized that Pauly was around 14 years of age at the time of the offenses and that since age 14, Pauly has not engaged in any other known or reported forms of sexual misconduct. According to the evaluation, Pauly does not have a significant history of antisocial behaviors, of violence, or of any other instances of sexual misconduct.

### 3. SENTENCING

At sentencing, the State argued for a period of incarceration, while Pauly argued he was a good candidate for probation. In sentencing Pauly, the court referenced Neb. Rev. Stat. § 29-2204.02(6) (Reissue 2016), which states:

> [I]f the defendant was under 18 years of age at the time he or she committed the crime for which he or she is convicted, the court may, in its discretion, instead of imposing the penalty provided for the crime, make such disposition of the defendant as the court deems proper under the Nebraska Juvenile Code.

The court emphasized that Pauly was a juvenile at the time he committed the offenses and that the juvenile code does not permit incarceration.

The court acknowledged the severity of the crimes, but also noted that it had to take into consideration the classifications under § 29-2204.02. The court further explained that

it considered all of the factors, including the circumstances of the crimes; the history, character, and condition of the defendant; the presentence investigation report; the statements received; the letters from the victim's family; and the State's recommendations.

Ultimately, the court sentenced Pauly to concurrent terms of 5 years' probation for each of his four convictions and ordered him to register under the Sex Offender Registration Act (SORA). The court also sentenced Pauly to serve 90 days in jail, but gave him credit for the 120 days he already served. The court further noted that because the State did not pursue any determination pursuant to Neb. Rev. Stat. § 83-174.03 (Cum. Supp. 2020), addressing community supervision, it would make no finding regarding it.

The State requested and received the Attorney General's approval to appeal the sentences as excessively lenient pursuant to Neb. Rev. Stat. §§ 29-2320 and 29-2321 (Reissue 2016). Pauly cross-appeals. We moved this case to our docket on our own motion.

## III. ASSIGNMENTS OF ERROR

The State assigns, restated and consolidated, that the district court erred by ordering excessively lenient sentences by (1) sentencing Pauly to probation and (2) failing to find aggravation under the SORA or, in the alternative, by committing plain error by failing to make a finding of aggravation under the SORA.

In his cross-appeal, Pauly assigns, restated, that the trial court erred in (1) denying his motion for directed verdict, (2) denying his motion to dismiss for lack of subject matter jurisdiction, and (3) refusing his proposed jury instruction regarding the dates the alleged incidents occurred.

## IV. STANDARD OF REVIEW

[1,2] When reviewing a sentence within the statutory limits, whether for leniency or excessiveness, an appellate court

reviews for an abuse of discretion.[1] A judicial abuse of discretion exists only when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying a just result in matters submitted for disposition.[2]

[3] In determining whether the district court erred in denying a party's motion to dismiss for lack of subject matter jurisdiction, an appellate court employs a de novo standard of review.[3]

[4] Whether jury instructions given by a trial court are correct is a question of law.[4] On a question of law, an appellate court is obligated to reach a conclusion independent of the determination reached by the court below.[5]

[5,6] In reviewing a criminal conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence.[6] Such matters are for the finder of fact, and a conviction will be affirmed, in the absence of prejudicial error, if the properly admitted evidence, viewed and construed most favorably to the State, is sufficient to support the conviction.[7] When reviewing a criminal conviction for sufficiency of the evidence to sustain the conviction, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[8]

---

[1] *State v. Parminter*, 283 Neb. 754, 811 N.W.2d 694 (2012).

[2] *Id*.

[3] See *Aldrich v. Nelson*, 290 Neb. 167, 859 N.W.2d 537 (2015).

[4] *State v. Taylor*, 262 Neb. 639, 634 N.W.2d 744 (2001).

[5] See *id*.

[6] *State v. Gartner*, 263 Neb. 153, 638 N.W.2d 849 (2002).

[7] *Id*.

[8] *Id*.

## V. ANALYSIS

### 1. JURISDICTION

[7] Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it.[9] Where a lower court lacks subject matter jurisdiction to adjudicate the merits of a claim, issue, or question, an appellate court also lacks the power to determine the merits of the claim, issue, or question presented to the lower court.[10]

On cross-appeal, Pauly argues, in part, that the district court erred in denying his motion to dismiss for lack of subject matter jurisdiction. The essence of Pauly's argument is that § 43-246.01(1)(d) grants a juvenile court exclusive original jurisdiction over any person who commits a felony and was under 14 years of age at the time of the offense. Therefore, according to Pauly, the district court lacked jurisdiction over any offenses that occurred prior to his 14th birthday.

[8,9] Absent a statutory indication to the contrary, words in a statute will be given their ordinary meaning.[11] An appellate court will not read anything plain, direct, or unambiguous out of a statute.[12] A court must attempt to give effect to all parts of a statute, and if it can be avoided, no word, clause, or sentence will be rejected as superfluous or meaningless.[13] A court must place on a statute a reasonable construction which best achieves the statute's purpose, rather than a construction which would defeat that purpose.[14]

---

[9] *Kozal v. Nebraska Liquor Control Comm.*, 297 Neb. 938, 902 N.W.2d 147 (2017).

[10] *Id*.

[11] *State v. Parks*, 282 Neb. 454, 803 N.W.2d 761 (2011).

[12] *Id*.

[13] *Id*.

[14] *Id*.

Under Neb. Rev. Stat. § 24-302 (Reissue 2016), the district court has original jurisdiction in all matters "except where otherwise provided." Subsection (2) of § 43-247 grants jurisdiction to the juvenile court over any *juvenile* who committed a felonious act and who was 11 years of age or older at the time the act was committed. Subsection (12) of § 43-247 also grants continuing jurisdiction to the juvenile court over "any individual adjudged to be within the provisions of this section *until the individual reaches the age of majority* or the court otherwise discharges the individual from its jurisdiction." (Emphasis supplied.) Section 43-246.01(3)(c) further grants concurrent jurisdiction to the district court and the juvenile court as to any *juvenile* described in Neb. Rev. Stat. § 29-1816(1)(a)(ii) (Reissue 2016), which section includes an "accused [who] was younger than eighteen years of age and [who] was fourteen years of age or older when an alleged offense punishable as a Class I, IA, IB, IC, ID, II, or IIA felony was committed." For purposes of the Nebraska Juvenile Code, "[a]ge of majority means nineteen years of age" and "[j]uvenile means any person under the age of eighteen."[15]

The common denominator of the preceding statutes is the use of the word "juvenile." Thus, when read together, these statutes support a determination that the juvenile court could not have exercised jurisdiction over the matter because Pauly was not a juvenile at the time he was charged.

Such a determination is consistent with the purpose of the juvenile code, which is to serve the best interests of the juveniles who fall within it.[16] This is also consistent with our prior holding that the juvenile court's jurisdiction ends when the juvenile reaches the age of majority, but the district court's jurisdiction continues.[17]

---

[15] Neb. Rev. Stat. § 43-245(2) and (11) (Reissue 2016).

[16] See, generally, *In re Interest of Veronica H.*, 272 Neb. 370, 721 N.W.2d 651 (2006).

[17] *State v. Parks, supra* note 11.

In *State v. Parks*,[18] a 24-year-old defendant was charged with first degree sexual assault on a child stemming from alleged offenses that occurred when the defendant was between 14 and 15 years old. In affirming the district court's denial of defendant's motion to transfer his case to juvenile court, we concluded that a juvenile court does not have jurisdiction over a person who has reached the age of majority. The mere fact that the defendant was a juvenile at the time he or she committed the offenses does not automatically give the defendant the right to be tried as a juvenile.[19]

Put differently, whether the juvenile court has jurisdiction over a person is determined not by the person's age at the time of the offense, but, rather, by the person's age at the time he or she is charged for the offense. Thus, §§ 43-246.01, 43-247, and 29-1816 are not applicable in this case because Pauly had surpassed the age of majority and was no longer a juvenile at the time he was charged. Therefore, the district court had original jurisdiction over the case and did not err in overruling Pauly's motion to quash/dismiss for lack of subject matter jurisdiction.

On cross-appeal, Pauly also argues the district court erred in refusing his proposed jury instructions regarding his age at the time of the offenses. Pauly contends that the instructions were necessary because if the jury determined that he was under 14 years of age at the time of the offenses, the district court would have no jurisdiction over the matter. In support of these proposed instructions, Pauly cited Neb. Rev. Stat. § 43-261.01 (Cum. Supp. 2020) and § 43-247. We take a moment to note that although Pauly cited § 43-261.01, it appears Pauly intended to cite § 43-246.01, which addresses juvenile court jurisdiction. However, as explained above, because Pauly was not a juvenile at the time he was charged,

---

[18] *Id*.

[19] *Id*.

the juvenile court could not have exercised jurisdiction over the matter. Therefore, §§ 43-246.01 and 43-247 are not applicable in this case and the district court did not err in refusing Pauly's proposed jury instructions. This assignment of error is without merit.

## 2. Excessively Lenient Sentences

### (a) Legally Permissible Sentences

All crimes in Nebraska are statutory in nature.[20] Sentences imposed upon persons convicted of a crime are also statutory.[21] Thus, in order to resolve the question of whether the district court erred in sentencing Pauly to concurrent terms of 5 years' probation for each of his four Class II felony convictions, it is necessary to examine the Nebraska statutes pertaining to criminal penalties and eligibility for probation.

Section 29-2204.02(6) provides sentencing guidelines for Class III, IIIA, and IV felonies, and it allows a court to, in its discretion, sentence a juvenile under the juvenile code instead of imposing the penalty provided for the crime. Neb. Rev. Stat. § 29-2204 (Reissue 2016) likewise gives the sentencing court the same authority over felonies other than Class III, IIIA, or IV felonies. At sentencing, the district court cited § 29-2204.02 as giving it the authority to sentence Pauly to a term of probation, even though Pauly was convicted of four Class II felonies. Even if the district court had instead cited § 29-2204, it would not have impacted our analysis because regardless, the district court lacked the authority to sentence Pauly under the juvenile code because Pauly was not a juvenile at the time he was charged.

[10] Nevertheless, the district court was statutorily authorized to sentence Pauly to terms of probation under Neb. Rev. Stat. § 29-2260 (Reissue 2016). When the record demonstrates

---

[20] *State v. Hamik*, 262 Neb. 761, 635 N.W.2d 123 (2001).

[21] *Id*.

that the decision of the trial court is correct, although such correctness is based on different grounds from those assigned by the trial court, an appellate court will affirm.[22]

Under Neb. Rev. Stat. § 28-105 (Cum. Supp. 2020), first degree sexual assault is a Class II felony, punishable by imprisonment for 1 to 50 years, but with no mandatory minimum. Subsection (4) of § 28-105 further provides that "[a] person convicted of a felony for which a mandatory minimum sentence is prescribed shall not be eligible for probation." In *State v. Hamik*,[23] the defendant was convicted of first degree sexual assault and sentenced to a term of probation. In agreeing with the defendant that he was eligible for probation, we stated that § 28-105(4) is not applicable to a defendant who is convicted of a Class II felony, for which the law prescribes a minimum term of incarceration, because a "minimum" sentence is not equivalent to a "mandatory minimum" sentence, as that term is used in the statute. To equate a "minimum" sentence with a "mandatory minimum" sentence would be contrary to our established principles of statutory interpretation.[24] In arriving at that conclusion, we also relied on § 29-2260(2), which allows a district court to impose a period of probation in lieu of incarceration upon its assessment of certain criteria set forth therein. Section 29-2260(2) provides:

> Whenever a court considers sentence for an offender convicted of either a misdemeanor or a felony for which mandatory or mandatory minimum imprisonment is not specifically required, the court may withhold sentence of imprisonment unless, having regard to the nature and circumstances of the crime and the history, character, and condition of the offender, the court finds that imprisonment of the offender is necessary for protection of the public because:

---

[22] *State v. Alarcon-Chavez*, 295 Neb. 1014, 893 N.W.2d 706 (2017).

[23] *State v. Hamik, supra* note 20.

[24] See *id*. See, also, *State v. Russell*, 291 Neb. 33, 863 N.W.2d 813 (2015).

(a) The risk is substantial that during the period of probation the offender will engage in additional criminal conduct;

(b) The offender is in need of correctional treatment that can be provided most effectively by commitment to a correctional facility; or

(c) A lesser sentence will depreciate the seriousness of the offender's crime or promote disrespect for law.

Similar to the defendant in *Hamik*, here, Pauly was convicted of the crime of first degree sexual assault, a Class II felony, for which the law prescribes a minimum sentence, but no mandatory minimum. Thus, Pauly was eligible to be sentenced to a term of probation for that crime in lieu of incarceration.

(b) Excessive Leniency

[11] Having concluded that probation was a legally permissible sentence, we turn to the question of whether Pauly's sentences were excessively lenient under the facts reflected in the record. When the State appeals from a sentence, contending that it is excessively lenient, this court reviews the record for an abuse of discretion, and a grant of probation will not be disturbed unless there has been an abuse of discretion by the sentencing court.[25] A sentence imposed by a district court that is within the statutorily prescribed limits will not be disturbed on appeal unless there appears to be an abuse of the trial court's discretion.[26] An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence.[27]

Neb. Rev. Stat. § 29-2322 (Reissue 2016) provides that where the State challenges a sentence as excessively lenient, the appellate court should consider:

[25] *State v. Gibson*, 302 Neb. 833, 925 N.W.2d 678 (2019).

[26] *Id*.

[27] *Id*.

(1) The nature and circumstances of the offense;

(2) The history and characteristics of the defendant;

(3) The need for the sentence imposed;

(a) To afford adequate deterrence to criminal conduct;

(b) To protect the public from further crimes of the defendant;

(c) To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; and

(d) To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; and

(4) Any other matters appearing in the record which the appellate court deems pertinent.

In *State v. Harrison*,[28] we recognized that where the sentence alleged to be excessively lenient is one of probation, it is also necessary for the trial court and the reviewing appellate court to consider the provisions of § 29-2260(2), which we outlined above, along with subsections (3) and (4), which provide:

The following grounds, while not controlling the discretion of the court, shall be accorded weight in favor of withholding sentence of imprisonment:

(a) The crime neither caused nor threatened serious harm;

(b) The offender did not contemplate that his or her crime would cause or threaten serious harm;

(c) The offender acted under strong provocation;

(d) Substantial grounds were present tending to excuse or justify the crime, though failing to establish a defense;

(e) The victim of the crime induced or facilitated commission of the crime;

(f) The offender has compensated or will compensate the victim of his or her crime for the damage or injury the victim sustained;

---

[28] *State v. Harrison*, 255 Neb. 990, 588 N.W.2d 556 (1999).

(g) The offender has no history of prior delinquency or criminal activity and has led a law-abiding life for a substantial period of time before the commission of the crime;

(h) The crime was the result of circumstances unlikely to recur;

(i) The character and attitudes of the offender indicate that he or she is unlikely to commit another crime;

(j) The offender is likely to respond affirmatively to probationary treatment; and

(k) Imprisonment of the offender would entail excessive hardship to his or her dependents.

(4) When an offender who has been convicted of a crime is not sentenced to imprisonment, the court may sentence him or her to probation.

We agree with the State's assessment of the severity of the crimes committed by Pauly. However, based on the evidence pertaining to the numerous other relevant factors under the district court's consideration at sentencing, we cannot conclude that Pauly's sentences were untenable, unreasonable, or clearly against justice or conscience, reason, and evidence.

[12,13] While certain guidelines are set forth by statute, neither the trial court's sentencing determination nor our review of that determination for an abuse of discretion is formulaic or simply a matter of doctrine.[29] The sentencing court is not limited in its discretion to any mathematically applied set of factors.[30] The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life.[31] It is not the function of an appellate court to conduct a de novo

---

[29] *State v. Gibson, supra* note 25.

[30] *Id.*

[31] *Id.*

review of the record to determine whether a sentence is appropriate.[32] Put differently, the standard is not what sentence we would have imposed.[33]

These were very serious crimes with an egregious set of facts. Still, the seriousness of the crimes committed against K.H., which weighs in favor of imprisoning Pauly, does not, by itself, lead to the conclusion that the district court abused its discretion in sentencing Pauly to concurrent terms of 5 years' probation for each conviction in lieu of incarceration. Although the seriousness of these crimes is not lost on this court, a sentence should fit the offender and not merely the crime.[34]

In *State v. Gibson*,[35] we recently considered a sentence of probation in lieu of incarceration for a conviction of a Class II felony. In that case, the defendant pled guilty to attempted first degree sexual assault of a child and was sentenced to 180 days' incarceration and 5 years' probation. The defendant was also subject to SORA. In finding that the defendant's sentence of probation was not excessively lenient, we recognized other cases involving Class II felonies of first degree sexual assault and sexual assault of a child, where a sentence of 5 years' probation with strict and demanding terms had been found to not be excessively lenient where the defendants were considered to be neither pedophiles nor sexual predators, had generally otherwise been law-abiding citizens, were remorseful, and were at a low risk to offend.[36] In finding that the sentence of probation in *Gibson* was not excessively lenient*,* we emphasized that the presentence investigation report demonstrated

---

[32] *Id*.

[33] *Id.*

[34] *Id*.

[35] *Id.*

[36] *Id*. (citing *State v. Antoniak*, 16 Neb. App. 445, 744 N.W.2d 508 (2008), and *State v. Thompson*, 15 Neb. App. 764, 735 N.W.2d 818 (2007)).

that the defendant led an exemplary life, had no criminal record, and was at a low risk to reoffend.

Like the defendant in *Gibson,* here, the presentence investigation report demonstrates that Pauly does not have a criminal record and is at a low risk to reoffend. Further, the psychological evaluation concluded that Pauly does not have a significant history of antisocial behaviors, of violence, or of any other instances of sexual misconduct. Additionally, Pauly was around 14 years old at the time he committed these offenses.

To the extent the State contends the district court gave improper consideration to Nebraska's juvenile jurisdiction statutes, we disagree. Although the juvenile jurisdiction statutes are not applicable here, Pauly's age at the time the offenses were committed was a relevant and proper factor for the district court to consider as it goes directly to the nature and circumstances of the offense, as well as to the history and characteristics of the defendant.[37]

[14] While there is temptation on a visceral level to conclude that anything less than incarceration depreciates the seriousness of crimes, it is the function of the sentencing judge, in the first instance, to evaluate the crime and the offender.[38] Evidence regarding a defendant's life, character, and previous conduct, as well as prior convictions, is highly relevant to the determination of a proper sentence.[39]

The sentences imposed by the district court were lenient, but we cannot conclude that the court abused its discretion by issuing sentences that were excessively lenient. In light of all the relevant sentencing considerations, the sentences were not untenable, unreasonable, or clearly against justice or conscience, reason, and evidence. Therefore, because the

---

[37] See § 29-2322(1) and (2).

[38] *State v. Gibson, supra* note 25.

[39] *Id*.

district court did not impose excessively lenient sentences, this assignment of error is without merit.

### (c) SORA

[15] It is undisputed that as a result of his convictions for first degree sexual assault, Pauly is subject to SORA. SORA is a civil regulatory scheme intended by the Legislature to protect the public from the danger posed by sex offenders.[40] Generally, SORA requires individuals that plead guilty to or are convicted of certain enumerated offenses to register with the county sheriff in the counties where they reside, work, and attend school.[41] Pauly was convicted of four counts of first degree sexual assault under § 28-319, which convictions make him subject to SORA's requirements.[42]

Those persons to whom SORA requirements apply generally must register "during any period of supervised release, probation, or parole" and then must continue to comply with SORA for a registration period following "discharge from probation, parole, or supervised release or release from incarceration, whichever date is most recent."[43] Neb. Rev. Stat. § 29-4005(1) (Reissue 2016) sets forth three different registration periods. Relevant to this appeal, the registration period is for life if the offender was convicted of a registrable offense punishable by imprisonment for more than 1 year and was convicted of an aggravated offense.[44]

SORA defines an "[a]ggravated offense" as

[a]n offense under [§] 29-4003 which involves the penetration of, direct genital touching of, oral to anal contact

---

[40] *State v. Wilson*, 306 Neb. 875, 947 N.W.2d 704 (2020).

[41] *Id*. (citing *State v. Ratumaimuri*, 299 Neb. 887, 911 N.W.2d 270 (2018)). See, generally, Neb. Rev. Stat. § 29-4004 (Reissue 2016).

[42] See Neb. Rev. Stat. § 29-4003(1)(a)(i)(C) (Cum. Supp. 2020).

[43] Neb. Rev. Stat. § 29-4005(1)(a) (Reissue 2016).

[44] § 29-4005(1)(b)(iii).

with, or oral to genital contact with (a) a victim age thir-
teen years or older without the consent of the victim, (b)
a victim under the age of thirteen years, or (c) a victim
who the sex offender knew or should have known was
mentally or physically incapable of resisting or appraising
the nature of his or her conduct.[45]

The State argues the district court erred by failing to make
a finding of aggravation. In response, Pauly asserts the State's
argument is moot because he was, in fact, directed by the
Nebraska State Patrol to register under SORA for life.

[16,17] Mootness refers to events occurring after the filing
of a suit which eradicate the requisite personal interest in the
resolution of the dispute that existed at the beginning of the
litigation.[46] A moot case is one which seeks to determine a
question that no longer rests upon existing facts or rights—i.e.,
a case in which the issues presented are no longer alive.[47] The
central question in a mootness analysis is whether changes in
circumstances that prevailed at the beginning of litigation have
forestalled any occasion for meaningful relief.[48]

In its reply brief, the State concedes the issue is moot if
the Nebraska State Patrol "is the proper agency to make this
[duration] determination."[49] Prior to statutory amendments to
SORA in 2009, there was no question that a sentencing court
was to make a determination as to whether a registrable offense
under SORA rose to the level of an aggravated offense.[50] Prior
to 2009, that authority was made clear by a provision within
SORA that expressly directed sentencing courts to make the

---

[45] Neb. Rev. Stat. § 29-4001.01 (Reissue 2016).

[46] *Blakely v. Lancaster County*, 284 Neb. 659, 825 N.W.2d 149 (2012).

[47] *Id*.

[48] *Id*.

[49] Reply brief for appellant at 9.

[50] See *State v. Wilson, supra* note 40. See, also, *State v. Hamilton*, 277 Neb.
593, 763 N.W.2d 731 (2009).

finding of an aggravated offense part of the sentencing order.[51] However, the 2009 amendments to SORA removed this provision from the statute.[52]

Then, in *State v. Wilson*,[53] a sentencing court found that the defendant had committed an aggravated offense, pursuant to his conviction for first degree sexual assault, and stated that the defendant was required to register under SORA for life. On appeal, the State argued that pursuant to the 2009 SORA amendments, the Nebraska State Patrol was now responsible for making the aggravation determination, while the defendant argued that sentencing courts must make that determination. In support of its argument, the State pointed to Neb. Rev. Stat. § 29-4013(5) (Reissue 2016), which provides that certain officials within the State Patrol "shall have access to all documents that are generated by any governmental agency that may have bearing on sex offender registration and community notification." Section 29-4013(5) also provides that "[a]ccess to such documents will ensure that a fair determination of what is an appropriate registration period is completed using the totality of all information available."

This court cautioned that it was difficult to reconcile the State's position with the provision of SORA providing that when sentencing a person for a registrable offense under SORA, the court has a duty to provide the defendant with written notification of the duty to register, and that the written notification shall, among other things, inform the defendant of "the duration of time he or she will be subject to the act."[54] We declined to reconcile §§ 29-4013(5) and 29-4007(1)(a)(i) and declined to decide whether a sentencing court meets its

---

[51] See § 29-4005(2) (Reissue 2008).

[52] Compare § 29-4005(2) (Reissue 2008), with § 29-4005 (Reissue 2016). See, also, 2009 Neb. Laws, L.B. 285, § 6.

[53] See *State v. Wilson, supra* note 40.

[54] Neb. Rev. Stat. § 29-4007(1)(a)(i) (Cum. Supp. 2020).

obligation under § 29-4007(1)(a)(i) by providing the defendant with only a range of possible registration periods.[55] Instead, we found it sufficient to hold that a sentencing court has the authority to find that the defendant committed an aggravated offense and that the State Patrol lacks the authority to subsequently make a different determination.[56]

The instant case again asks this court to determine the scope of the State Patrol's authority under SORA, but doing so is unnecessary. The parties agree that Pauly is subject to lifetime registration under SORA, and as such, the issue is moot.

### 3. Cross-Appeal

#### (a) Brief on Cross-Appeal

[18,19] Generally, parties who wish to secure appellate review of their claims must abide by the rules of the Nebraska Supreme Court.[57] Any party who fails to properly identify and present its claim does so at its own peril.[58] Depending on the particulars of each case, failure to comply with the mandates of Neb. Ct. R. App. P. § 2-109(D) (rev. 2022) may result in an appellate court's waiving the error, proceeding on a plain error review only, or declining to conduct any review at all.[59]

A cross-appeal must be properly designated, pursuant to § 2-109(D)(4), if affirmative relief is to be obtained.[60] A cross-appeal is properly designated by noting it on the cover of the appellee brief and setting it forth in a separate division of the brief.[61] This separate section "shall be headed 'Brief

---

[55] See *State v. Wilson, supra* note 40.

[56] *Id.*

[57] *Great Northern Ins. Co. v. Transit Auth. of Omaha*, 308 Neb. 916, 958 N.W.2d 378 (2021), *disapproved on other grounds, Clark v. Sargent Irr. Dist.*, 311 Neb. 123, 971 N.W.2d 298 (2022).

[58] *Id*.

[59] *Id*.

[60] *Id.*

[61] *Id*. See § 2-109(D)(4).

on Cross-Appeal' and shall be prepared in the same manner and under the same rules as the brief of appellant."[62] Under § 2-109(D)(1), the brief of appellant must include, in part, (1) a statement of the basis of jurisdiction, (2) a statement of the case, (3) a separate assignment of errors section, (4) propositions of law, (5) a statement of facts, (6) a summary of the argument, and (7) the argument.

Here, Pauly's cross-appeal fails to fully abide with the rules for the brief of an appellant because his brief on cross-appeal fails to set forth a separate (1) statement of the basis of jurisdiction on cross-appeal, (2) statement of the case on cross-appeal, (3) assignments of error on cross-appeal, (4) propositions of law on cross-appeal, (5) statement of facts on cross-appeal, and (6) summary of the argument on cross-appeal. The decisive particulars governing how we treat failures to fully abide with the rules for the brief of an appellant depend on the nature of the noncompliance.[63] In this appeal, we elect to proceed to review for plain error.

[20] Plain error is error plainly evident from the record and of such a nature that to leave it uncorrected would result in damage to the integrity, reputation, or fairness of the judicial process.[64] As we have already addressed Pauly's assignments of error regarding his motion to quash/dismiss and his proposed jury instructions, the only remaining assignment of error is the court's overruling of his motion for directed verdict.

### (b) Motion for Directed Verdict

Pauly assigns the district court erred in denying his motion for directed verdict at the conclusion of the State's case. However, after his motion for directed verdict was denied, Pauly called his mother to the stand to testify on his behalf. A defendant who moves for a directed verdict at the close of the

---

[62] § 2-109(D)(4).

[63] See *Great Northern Ins. Co. v. Transit Auth. of Omaha, supra* note 57.

[64] *Id.*

evidence in the State's case in chief in a criminal prosecution, and who, when the court overrules the dismissal or directed verdict motion, proceeds with trial and introduces evidence, waives the appellate right to challenge correctness in the trial court's overruling the motion for a directed verdict, but may challenge sufficiency of the evidence for the defendant's conviction.[65] As such, there is no plain error supporting this assignment of error.

Pauly also argues that the court erred in overruling his motion for a directed verdict because the prosecution presented insufficient evidence to warrant his convictions. He asserts that there were numerous discrepancies in K.H.'s testimony, that no other witnesses could corroborate K.H.'s claims, that there was contradictory testimony from other witnesses, that there was a lack of physical evidence to support K.H.'s claims, and that there was overall uncertainty surrounding K.H.'s claims.

Regardless of whether the evidence is direct, circumstantial, or a combination thereof, and regardless of whether the issue is labeled as a failure to direct a verdict, insufficiency of the evidence, or failure to prove a prima facie case, the standard is the same: In reviewing a criminal conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact, and a conviction will be affirmed, in the absence of prejudicial error, if the evidence admitted at trial, viewed and construed most favorably to the State, is sufficient to support the conviction.[66]

Accordingly, we will not review the credibility of K.H. or any of the other witnesses, resolve the conflicts in K.H.'s testimony, or reweigh the evidence of Pauly's guilt; these were determinations appropriate only for the trier of fact.[67] K.H.

---

[65] *State v. Gartner, supra* note 6.

[66] *State v. Jedlicka*, 297 Neb. 276, 900 N.W.2d 454 (2017).

[67] See *id*.

testified that Pauly sexually assaulted her on four separate occasions. Along with the other evidence admitted at trial, all viewed in favor of the State, there was sufficient evidence for a rational jury to find beyond a reasonable doubt that Pauly was guilty of four counts of first degree sexual assault. We find no plain error in the district court's finding of prima facie evidence to deny Pauly's motion for a directed verdict. This assignment of error is without merit.

## VI. CONCLUSION

For the foregoing reasons, we affirm Pauly's convictions and sentences.

Affirmed.